Kathleen M. GEORGE, Plaintiff,

v.

PARKE–DAVIS, et al., Defendants.

No. C–82–836–JLQ.

United States District Court, E.D. Washington.

April 19, 1988.

Richard Eymann Feltman, Eymann, Jones & Montgomery, Spokane, Wash., Constance D. Gould, Evans, Craven & Lackie, P.S., Seattle, Wash., for plaintiff.

Brian T. Rekofke, William D. Symmes, Witherspoon, Kelley, Davenport & Toole, Spokane, Wash., for defendant Parke–Davis.

John W. Schedler, Lee, Smart, Cook, Martin & Patterson, Seattle, Wash., for defendant Lemmon Co.

## ORDER GRANTING DEFENDANT LEMMON CO.'S MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, District Judge.

Plaintiff, Kathleen George, brought this products liability action against various pharmaceutical companies for personal injuries allegedly sustained by plaintiff as a result of her mother's ingestion of diethylstilbestrol (DES) while pregnant with plaintiff in 1959. Plaintiff's mother is unable to identify the manufacturer of the DES she took, but it is undisputed that she purchased three prescriptions of 25 mg. DES at the Perkins Pharmacy in Lewiston, Idaho. Although the complaint filed in 1982 named numerous defendants, defendants Parke–Davis and Lemmon Co. are the only remaining defendants. Coming regularly before the court is defendant Lemmon Co.'s Motion for Summary Judgment. Richard C. Eymann and Constance D. Gould represent plaintiff; representing defendants are John W. Schedler for defendant Lemmon Co. and Brian T. Rekofke for defendant Parke–Davis. Having reviewed the record and being fully advised in this matter, defendant Lemmon Co.'s Motion for Summary Judgment is HEREBY GRANTED as follows.

## FACTUAL BACKGROUND

The court finds the following facts to be undisputed:

(1) Haack Laboratories was involved in the manufacture and sale of DES prior to 1963 and may have manufactured the DES in question.

(2) Lemmon 1 gave $250,000 and 12,626 shares of Lemmon 1 stock as consideration in acquiring 100 percent of Haack's stock in September 1963.

(3) After the acquisition, Lemmon 1 operated Haack as a wholly-owned subsidiary, but eliminated approximately two-thirds of Haack's products; DES production was terminated immediately upon acquisition of Haack, or within approximately 1 year.

(4) Haack was dissolved in 1969, although its name was retained as a Lemmon 1 sales division.

(5) Lemmon 1 adopted a plan of complete liquidation and changed its name to L.P.C. Liquidation in June 1972.

(6) Hollin Corporation acquired substantially all of the working assets of L.P.C. Liquidation for $2,900,000 ($2,750,000 cash and a $150,000 promissory note) in July 1972; there was no identity of officers, directors or stockholders with the exception that Edna Miller served as treasurer of both corporations, and Harry Grim and Patrick Hopper owned a minority interest in the stock of Lemmon 1 and subsequently became minority stockholders in Hollin (Lemmon 2).

(7) Following the acquisition by Hollin, L.P.C. Liquidation made a stockholder distribution, but kept a reserve of $204,000 for contingent liabilities and did not dissolve until May 1973.

(8) In its acquisition of L.P.C. Liquidation, Hollin assumed only certain enumerated liabilities, not including any liability relating to the manufacture and/or sale of DES by any company.

(9) At the time Hollin acquired L.P.C., L.P.C. was not manufacturing DES and had not done so for at least 7½ years.

(10) Hollin neither continued nor initiated production of DES, although it continued to manufacture pharmaceuticals, including many that had previously been manufactured by L.P.C.

(11) Hollin subsequently changed its name to Lemmon Pharmacal, and later to the Lemmon Company (Lemmon 2) after expansion into nonpharmaceutical lines.

## DISCUSSION

In any discussion of summary judgment, it is appropriate to review the Supreme Court's latest summary judgment pronouncements. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As *Zenith Radio Corp., supra* and its progeny amply demonstrate, application of the seemingly elementary principles of Rule 56, Fed.R.Civ.P., has become an increasingly ambitious undertaking not only for the parties but for the trial and appellate courts as well.

We begin with the unstartling proposition that Rule 56 provides for summary judgment when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law.

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion of summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson, supra,* 477 U.S. at 247–48, 106 S.Ct. at 2510.

A party seeking summary judgment always bears the initial burden of:

> identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any", which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case on which that party will bear the burden of proof at trial, all other facts are rendered immaterial and the moving party is "entitled to judgment

as a matter of law" because the nonmoving party has failed to make a sufficient showing of an essential element of his case with respect to which he had the burden of proof. *Id.; California Architectural Bldg. Prods. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466 (9th Cir.1987).

Absent a complete failure of proof concerning an essential element of the nonmoving party's case on which that party will bear the burden of proof at trial, determining the appropriateness of a summary judgment requires a two-step process: (1) determination of whether a fact is material; and (2) determination of whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court, and consideration of that evidence in light of the appropriate standard of proof.

As to materiality, the applicable substantive law will identify which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. "This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination." *Id.* In this action, Washington State substantive law will identify which facts are material.

Given that a fact is determined to be material, summary judgment will not lie "if the dispute about that fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52, 106 S.Ct. at 2511–12.

A party seeking summary judgment bears the initial burden of submitting a properly supported motion demonstrating the absence of a genuine issue of material fact. Where the moving party has met his initial burden with a properly supported motion, the burden of showing a genuine

issue of material fact shifts to the opposing party. The opponent may not rest upon his pleadings, but must set forth "specific facts" showing that there is a genuine issue for trial. *Id.* at 248, 106 S.Ct. at 2510. That is, for the disputed factual issue to be "genuine", the opponent "must do more than simply show ... there is some metaphysical doubt as to the material facts." *Zenith Radio, supra,* 475 U.S. at 586, 106 S.Ct. at 1356. If the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *California Architectural Bldg. Prods., supra* (citing *Zenith Radio, supra* ). It is in determining whether the nonmoving party has, in fact, presented sufficient affirmative evidence to defeat the motion for summary judgment that the court must apply the evidentiary standard of proof which would be utilized by the jury were the issue to go to trial.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2511. However, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511. "When determining if a genuine factual issue ... exists, ... a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id.* at 254, 106 S.Ct. at 2513. This necessitates application of the substantive evidentiary standard of proof that would apply at the trial on the merits. *Id.* at 252, 106 S.Ct. at 2512. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* "Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. *Id.* at 254, 106 S.Ct. at 2513. The question is, therefore, "whether a jury could reasonably find *either* that the plaintiff proved

his case by the quality and quantity of evidence required by the governing law *or* that he did not." *Id.* The benchmark as to what standards govern the trial judge's determination as to whether or not a genuine issue exists, are those in fact provided by the applicable evidentiary standards. *Id.* at 255, 106 S.Ct. at 2513.

Washington courts have adopted the general rule that where one company sells all its assets to another company for a fair consideration, the purchaser is not liable for the debts and obligation of the seller. *Martin v. Abbott Labs.,* 102 Wash.2d 581, 689 P.2d 368 (1984); *Meisel v. M & N Modern Hydraulic Press Co.,* 97 Wash.2d 403, 405, 645 P.2d 689 (1984); *Cashar v. Redford,* 28 Wash.App. 394, 396, 624 P.2d 194 (1981). However, Washington courts also have traditionally recognized four exceptions to the general rule of nonliability, finding a successor corporation liable for the debts and liabilities of the selling corporation if:

(1) the purchaser expressly or impliedly agrees to assume liability; or

(2) the purchase is a de facto merger or consolidation; or

(3) the purchaser is a mere continuation of the seller; or

(4) the transfer of assets is for the fraudulent purpose of escaping liability. *Martin, supra,* 102 Wash.2d at 609, 689 P.2d 368; *Meisel, supra,* 97 Wash.2d at 405, 645 P.2d 689; *Cashar, supra,* 28 Wash.App. at 396, 624 P.2d 194.

■ The Washington Supreme Court recognized that these four traditional exceptions may not adequately address the particular circumstances of a products liability claimant in *Martin v. Abbott Labs., supra,* 102 Wash.2d at 581, 689 P.2d 368. The court specifically rejected any expansion of the four traditional rules and instead adopted a fifth and separate exception in the context of products liability actions, the "product-line" exception. *Id.* at 616, 689 P.2d 368. The "product-line" exception applies where the purchaser corporation acquires a manufacturing business and continues to sell a line of products previously

sold by the acquired business. The court subsequently clarified its *Martin* holding in the Certification of Questions from this court in this case, *George v. Parke–Davis*, 107 Wash.2d 584, 733 P.2d 507 (1987). In certifying question I, the court found that because Lemmon 2 had not continued to manufacture DES, Lemmon 2 is not liable for injuries caused by DES manufactured by Haack under the "product-line" exception to successor corporate nonliability. *Id.* at 590, 733 P.2d 507. In certifying question II, however, the court stated that plaintiff was not precluded from proving any one of the four traditional exceptions to nonliability in the sale of assets context. *Id.* at 590–91, 733 P.2d 507. Thus, under Washington law, the burden is on the plaintiff to prove that Lemmon 2 is liable by establishing that one of the four traditional exceptions exists here. The evidentiary standard is a preponderance of the evidence.

Plaintiff does not allege, nor does the evidence support the fact, that the sales contract between Lemmon 1 and Lemmon 2 worked a fraud on creditors (exception 4). Plaintiff contends that Lemmon 2 expressly or impliedly assumed liability for products liability claims against its predecessors or that the purchase of assets by Lemmon 2 from Lemmon 1 constituted a de facto merger or consolidation or that Lemmon 2 is a mere continuation of Lemmon 1. The court is satisfied that plaintiff has not set forth sufficient facts to defeat the motion for summary judgment.

## EXPRESS OR IMPLIED AGREEMENT TO ASSUME LIABILITY

The purchase and sale agreement between Lemmon 1 and Lemmon 2 specifically provided that Lemmon 2 assumed certain expressed liabilities of Lemmon 1. Section 1.2.1 of the agreement provides in pertinent part: "Buyer hereby assumes and shall pay and perform the obligations and liabilities of Seller as stated on the Balance Sheet as of June 30, 1972." The June 30, 1972 balance sheet reflects liabilities normally associated with general business operations (wages and salaries, taxes, accounts and notes payable, etc.) Section

1.2.1 of the contract further specifies that "Buyer hereby assumes and shall pay and perform ..., and any and all other liabilities or obligations arising in the ordinary course of conduct of Seller's business since July 1, 1972 ..." This court construes this as referring to the period between the date the balance sheet was prepared, June 30, 1972, and the date the transaction was closed, July 20, 1972, and is not applicable here. The contract does not clearly express either the inclusion or exclusion of any liability for tort or product liability actions. Therefore, there is no express agreement to assume liability in a product liability DES case such as this.

Perhaps plaintiff's best argument is that in the voluminous documents filed with the court in this case, there are two references to product liability insurance, which plaintiff contends indicates an implied assumption of Lemmon 1's product liability liabilities by Lemmon 2. Section 2.15 of the sales contract states that

> Seller has heretofore furnished Buyer with a list annexed hereto as Schedule VII containing a brief description of the policies of fire, liability (including products liability) and other forms of insurance held by Seller.

The second reference to product liability insurance is found in a letter dated July 20, 1972 regarding the purchase and sale agreement between Lemmon 1 and Lemmon 2. The letter reads:

> Lemmon Pharmacal Co. ("Lemmon") and Hollin Corp. ("Hollin") have on this date entered into a Purchase and Sale agreement whereby Hollin purchased substantially all of the assets of Lemmon for $2,900,000 of which $150,000 is represented by a promissory note (the "Note") due 30 months from the date hereof.
>
> Hollin does hereby agree that so long as the Note is outstanding, Hollin shall maintain Lemmon or its successors as an additional insured on Hollin's products liability insurance policy; provided, however, that Hollin shall not incur an additional premium as a consequence thereof.

The letter is signed by Harris N. Hollin, President, Hollin Corp., and is agreed to and accepted by John L. Lemmon, President, Lemmon Pharmacal Co. The court is satisfied that these two references to product liability are consistent with Lemmon 2's position that it was not assuming liability for Lemmon 1's product liability liabilities, but did agree to pay for a policy to cover such claims until the transaction was closed. The fact that LPC Liquidation continued in existence for almost a year, in order to provide for contingent liabilities, further indicates the parties' intent that Lemmon 2 assume only enumerated liabilities. Defendant Lemmon 2 has met its initial burden with a properly supported motion for summary judgment. Under Washington law, whether Lemmon 2 expressly or impliedly assumed liability is a material fact which would affect the outcome of this case at trial. Plaintiff has not set forth sufficient specific facts to show a genuine issue for trial.

## MERGER OR CONSOLIDATION

Plaintiff contends that Lemmon 2's purchase of Lemmon 1's assets amounted to a merger or consolidation of the two businesses. A merger or consolidation occurs when two or more corporations unite so that one absorbs the other, or where the result is a new third corporation. RCW 23A.20 specifies the statutory procedures that corporations must follow to effectuate a merger or consolidation. Clearly, there was no statutory merger or consolidation here. The de facto merger exception is designed to protect creditors and minority shareholders in situations where the elements of a statutory merger have not been met. A de facto consolidation or merger "can only be found when the consideration given to the selling corporation for its assets is shares of the purchasing corporation's stock, rather than cash." *Cashar v. Redford*, 28 Wash.App. 394, 398, 624 P.2d 194 (9th Cir.1981). Here, although stock was part of the consideration given in the acquisition of Haack by Lemmon 1, the sale of Lemmon 1's assets to Lemmon 2 was clearly a purely cash transaction. Plaintiff would have the burden at trial of showing,

as an essential element of a de facto merger or consolidation, that Lemmon 2 gave Lemmon 1 stock, rather than cash, for its assets. There is a complete failure of proof on this essential element, entitling Lemmon 2 to summary judgment as a matter of law.

## MERE CONTINUATION

Finally, plaintiff contends that Lemmon 2 is a mere continuation of Lemmon 1. As with the previously discussed arguments, the court finds that the evidence here, under controlling law, does not support such a contention. One crucial factor, in finding that a continuation exception exists, is a common identity of the officers, directors and stockholders in the selling and purchasing companies. *Cashar, supra* at 397, 624 P.2d 194. The court in *Cashar* (quoting *McKee v. Harris–Seybold Co.*, 109 N.J. Super. 555, 570, 264 A.2d 98, 106 (1970) stated:

> "The mere fact that the purchaser continues the operations of the seller does not of itself render the purchaser liable for the obligations of the seller; in order to impose liability on the purchaser, it must be shown that the purchaser represents 'merely a new hat' for the seller." *Id.* 28 Wash.App. at 397, 624 P.2d 194.

The court further stated, "[r]etaining a trade name and purchasing good will also do not provide sufficient reason for holding a successor liable." *Id.*

Another factor in finding a "continuation" is the sufficiency of the consideration for the assets sold. *Id.*

Plaintiff contends a common identity of the officers, directors and stockholders in that Edna Miller served as treasurer of both Lemmon 1 and Lemmon 2 and that Harry Grim and Patrick Hopper owned stock in Lemmon 1 and subsequently became stockholders in Lemmon 2. The evidence in this case shows that John L. Lemmon sold his controlling interest in Lemmon 1 to Harris N. Hollin. John L. Lemmon had no relationship with Lemmon 2 whatsoever. *See* Hollin Affidavit, p. 6; Grim Deposition, p. 100. Mr. Hollin then appointed himself Chairman of the Board

of Directors and President of Lemmon 2. The management and control of the company was transferred to new people. The court is satisfied that plaintiff has not shown sufficient specific facts to show a genuine issue for trial that Lemmon 2 was "merely a new hat" for John L. Lemmon and Lemmon 1. Patrick Hopper and Harry Grim may have owned minority interests in Lemmon 1 and subsequently acquired some stock in Lemmon 2; however, these interests are insignificant in light of the majority interest owned by John Lemmon in Lemmon 1, who had no connection with Lemmon 2, and the majority interest in Lemmon 2, owned by Harris Hollin, who had no connection with Lemmon 1. Edna Miller served as treasurer of both corporations. However, although she had been on the Board of Directors of Lemmon 1, she was not retained on Lemmon 2's Board of Directors. Her involvement in Lemmon 2 was insufficient to show the control necessary to meet the continuity requirement. No other director, officer, or shareholder was retained by Lemmon 2. Plaintiff does not allege, nor does the evidence support a finding, that the consideration paid for Lemmon 1's assets was insufficient. The court finds that plaintiff has failed to show she could prevail at trial by a preponderance of the evidence on the mere continuation exception.

## CONCLUSION

As the Washington Supreme Court noted in *Martin v. Abbott Labs.*, 102 Wash.2d 581, 616, 689 P.2d 368, in rejecting an expansion of the traditional exceptions to nonliability of successor corporations and establishing the fifth "product-line" exception:

> *This narrowly drawn rule strikes a fair balance among the competing considerations of products liability and corporate acquisitions.* Imposition of liability is properly based on the successor's receipt of a benefit from the predecessor's line. The benefit of being able to take over a going concern manufacturing a specific product line is necessarily burdened with potential products liability linked to the product line. *This standard allows the parties to a transfer to consider potential products liability and in fairness to the competing considerations still leaves some claimants uncompensated and some forms of transfer immune.*

(Emphasis added.) Defendant Lemmon has met its initial burden with a properly supported summary judgment motion. Under Washington substantive law, the facts as to whether Lemmon 2 expressly or impliedly assumed liability for Lemmon 1's product liabilities; whether the purchase of assets was a de facto merger or consolidation; and whether Lemmon 2 was a mere continuation of Lemmon 1 would affect the outcome at trial and are, therefore, "material facts." The burden therefore shifts to plaintiff to set forth specific facts showing there is a genuine issue for trial. Plaintiff has not pointed to any deposition testimony or to any affidavit testimony or other evidence sufficient to show she could prevail at trial against defendant Lemmon under the four traditional exceptions to the general rule that where one company sells all its assets to another company for a fair consideration, the purchaser is not liable for the debts and obligations of the seller. The court independently has reviewed the record and, similarly, is unable to conclude that defendant Lemmon's Motion for Summary Judgment should not be granted.

Plaintiff's complaint and the claims therein against Lemmon Co. must be DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.