909 F.2d 1260
 31 ERC 1737, 59 USLW 2086, 20 Envtl.
L. Rep. 21,079
 LOUISIANA-PACIFIC CORPORATION, Plaintiff,
v.
ASARCO, INC., Defendant-Third-
Party-Plaintiff-Appellant,
v.
L-Bar Products, Inc., a Washington corporation as Successor
in Interest to third-party defendant,
Third-Party-Defendant-Appellee,
and
William FJETLAND; Industrial Mineral Products, Inc., a
Washington corporation; Murray Pacific Corporation, a
Washington corporation; Portac, Inc., a Delaware
corporation on its own behalf and as Successor in Interest;
US Gypsum Company, a Delaware corporation; Cascade Timber
Company, a Washington corporation; Executive Bark, Inc., a
Washington corporation; Wasser & Winters Company, a
Washington corporation, Third-Party-Defendants.
 No. 89-35402.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 8, 1990.
Decided July 3, 1990.
As Amended Aug. 6, 1990.
 
 Michael R. Thorpe, Blair C. Stone, Heller, Ehrman, White & McAuliffe, Seattle, Wash., for defendant/third party plaintiff-appellant.
 Richard W. Elliott, Jeff Belfiglio, and Miriam Reed, Davis Wright Tremaine, Bellevue, Wash., for third-party defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, POOLE and BRUNETTI, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 This appeal arises out of consolidated actions brought by Louisiana-Pacific Corporation and the Port of Tacoma against Asarco, Inc., under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. Secs. 9607, 9613, for recovery of costs incurred in cleaning up the release of hazardous waste. Asarco brought a third-party claim against L-Bar Products, Inc. seeking contribution or indemnity based on L-Bar's status as a corporate successor to Industrial Mineral Products (IMP) which marketed the waste for Asarco. Asarco challenges the district court's grant of summary judgment in favor of L-Bar. We affirm.
 
 BACKGROUND
 
 2
 For almost 80 years, Asarco had a copper smelter at Ruston, Washington. As part of its operations, it produced a by-product called "slag," a hard rock-like substance. IMP sold the slag to several businesses, including Louisiana-Pacific, from the early 1970s until March 1985 when the copper smelter ceased operations. About nine months after IMP stopped selling the slag, it sold substantially all its assets to L-Bar.
 
 
 3
 One major use of the slag was as ballast to stabilize the ground at log sort yards in the Tacoma area. Government agencies now assert that the slag reacted with the acidic wood-waste in the log sort yards, causing heavy metals from the slag to leach into the groundwater and soil. It appears that the log yards may require substantial environmental clean up.
 
 
 4
 Louisiana-Pacific and the Port of Tacoma sued Asarco under CERCLA, claiming that it was liable for the costs of cleaning up and abating the release of the hazardous substances. Asarco brought third-party claims against L-Bar and others for contribution or indemnity in the event that Louisiana-Pacific and the Port of Tacoma succeed in their action against it. It sued L-Bar as successor in interest to IMP.
 
 
 5
 L-Bar moved for summary judgment, claiming that it was not the successor to IMP and could not be liable under CERCLA for IMP's actions. Judge Bryan applied Washington law to successor liability, reasoning that there was not a significant difference between federal and Washington law. See Louisiana-Pacific Corp. v. Asarco, Inc., 29 Env't Rep. Cas. (BNA) 1450, 1452 (W.D.Wash.1989). He granted L-Bar's motion for summary judgment and denied Asarco's motion for reconsideration.
 
 ANALYSIS
 I. Standard of Review
 
 6
 We review de novo a district court's grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989). We must determine, viewing the evidence in the light most favorable to the nonmoving party, if there are genuine issues of material fact and if the district court applied the law correctly. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 II. Successor Liability Under CERCLA
 
 7
 Preliminarily, we must decide whether there is successor liability under CERCLA. Although Congress failed to address specifically the issue of corporate successor liability in CERCLA, we find Third Circuit authority persuasive on this issue and hold that Congress did intend successor liability. See Smith Land & Improvement Corp. v. Celotex Corp., 851 F.2d 86, 91-92 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989) (citing Oner II, Inc. v. United States Environmental Protection Agency, 597 F.2d 184 (9th Cir.1979)); see also In re Acushnet River & New Bedford Harbor Proceedings, 712 F.Supp. 1010, 1013 (D.Mass.1989). But see Anspec Co. v. Johnson Controls, Inc., 30 Env't Rep.Cas. (BNA) 1672, 1674-75 (E.D.Mich.1989) (successor liability does not exist under CERCLA).
 
 
 8
 We also agree with the Third Circuit that the issue of successor liability under CERCLA is governed by federal law.[1] Smith Land, 851 F.2d at 91 ("The meager legislative history available indicates that Congress expected the courts to develop a federal common law to supplement the statute.") (citations omitted); see also United States v. Chem-Dyne Corp., 572 F.Supp. 802, 808-09 (S.D.Ohio 1983) (analyzing legislative history of CERCLA and determining that federal common law applies).
 
 
 9
 Because Congress has not addressed the issue of successor liability under CERCLA, we must look to other circuits and the states for guidance in fashioning the federal law. When examining successor liability under CERCLA in the context of a merger or consolidation, the Third Circuit said:
 
 
 10
 We believe it in line with the thrust of the legislation to permit--if not require--successor liability under traditional concepts....
 
 
 11
 In resolving the successor liability issues here, the district court must consider national uniformity; ... The general doctrine of successor liability in operation in most states should guide the court's decision rather than the excessively narrow statutes which might apply in only a few states.
 
 
 12
 Smith Land, 851 F.2d at 92. We believe its analysis is equally applicable to successor liability in the context of an asset sale, and hold that the traditional rules of successor liability in operation in most states should govern.[2] See Acushnet, 712 F.Supp. at 1014 (adopting the traditional rules of successor liability in the context of an asset purchase on the basis of Smith Land ).
 
 III. Traditional Rules of Successor Liability
 
 13
 Under traditional rules of successor liability, asset purchasers are not liable as successors unless one of the following four exceptions applies:
 
 
 14
 (1) The purchasing corporation expressly or impliedly agrees to assume the liability;
 
 
 15
 (2) The transaction amounts to a "de-facto" consolidation or merger;
 
 
 16
 (3) The purchasing corporation is merely a continuation of the selling corporation; or
 
 
 17
 (4) The transaction was fraudulently entered into in order to escape liability.
 
 
 18
 See, e.g., Martin v. Abbott Laboratories, 102 Wash.2d 581, 609, 689 P.2d 368, 384 (1984);[3] Gee v. Tenneco, Inc., 615 F.2d 857, 863 (9th Cir.1980) (applying California law); 15 W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 7122 (rev. perm. ed. 1983).
 
 
 19
 Asarco argues that it has established genuine issues of material fact under both the implied assumption of liability and de-facto merger exceptions. It also argues that it has established material facts under an expanded version of the mere continuation exception, known as the continuing business enterprise exception. We disagree.
 
 A. Implied Liability Exception
 
 20
 Asarco argues for the first time on appeal that L-Bar may have impliedly assumed IMP's liability. As a general rule, we will not consider issues on appeal that were not raised in the district court. See Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985). Although the rule permits discretion, we see no reason to depart from it in this case. The question of implied assumption of liability is a fact specific question, rather than a purely legal issue, and additional facts would have to be developed.[4] See Abex Corp. v. Ski's Enter., Inc., 748 F.2d 513, 516 (9th Cir.1984) (rule is waived when the question is a purely legal one that is central to the case and important to the public).
 
 B. De Facto Merger Exception
 
 21
 Asarco also argues that there are genuine issues of fact as to whether the asset purchase was a de facto merger. Courts have recognized de facto mergers when:
 
 
 22
 (1) there is a continuation of the enterprise of the seller in terms of continuity of management, personnel, physical location, assets, and operations;
 
 
 23
 (2) there is a continuity of shareholders;
 
 
 24
 (3) the seller ceases operations, liquidates, and dissolves as soon as legally and practically possible; and
 
 
 25
 (4) the purchasing corporation assumes the obligations of the seller necessary for uninterrupted continuation of business operations.
 
 
 26
 See, e.g., Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 310 (3d Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985); Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451, 1457-58 (11th Cir.1985).
 
 
 27
 Asarco argues that continuity of shareholders is not necessary for finding a de facto merger. Its argument has no merit because courts have consistently required continuity of shareholders, accomplished by paying for the acquired corporation with shares of stock.[5] See, e.g., Arnold Graphics Indus. v. Independent Agent Center, Inc., 775 F.2d 38, 42 (2d Cir.1985) (" '[t]o find that a de facto merger has occurred there must be ... continuity of stockholders' ") (emphasis in original) (quoting Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F.Supp. 834, 838 (S.D.N.Y.1977)); Dayton v. Peck, Stow & Wilcox Co., 739 F.2d 690, 693 (1st Cir.1984) (continuity of shareholders is "[o]ne of the key requirements" of the doctrine).
 
 
 28
 Here, there was no continuity of shareholders. The consideration paid by L-Bar for IMP was a combination of cash, a promissory note and payment of some debts. No stock in L-Bar or Reserve Industries Corporation, L-Bar's parent corporation,[6] was exchanged as part of the sale. Although a few IMP shareholders now own stock in Reserve, that was bought on the open market, and no former IMP shareholder holds more than 2 1/2% of Reserve stock. Because there is no genuine issue of material fact as to continuity of shareholders, the district court did not err in finding that the asset purchase was not a de facto merger.
 
 C. Continuing Business Enterprise Exception
 
 29
 Citing our decision in Oner II, Inc. v. United States Environmental Protection Agency, 597 F.2d 184 (9th Cir.1979), Asarco argues that in keeping with the purposes of CERCLA, we should adopt a more expansive version of the mere continuation exception, known as the continuing business enterprise exception. See, e.g., Cyr v. B. Offen & Co., 501 F.2d 1145, 1152-54 (1st Cir.1974); Turner v. Bituminous Casualty Co., 397 Mich. 406, 244 N.W.2d 873, 881-83 (1976). Even were we to adopt the exception, it is inapplicable here.[7]
 
 
 30
 In Oner II, 597 F.2d at 186-87, we addressed the question of successor liability of an asset purchaser under the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. Secs. 136-136w. There, the EPA had issued a complaint and recommended a fine against Del Chemical Corporation for violations of FIFRA. Oner II, 597 F.2d at 185. Three months later, Oner II was formed to purchase Del's assets and to continue distributing the same pesticides for which the EPA had recommended the fine. When the EPA amended its complaint to name Oner II, Oner II objected to the EPA's decision to extend liability to it. Id. at 185-86. We affirmed the EPA's authority to extend liability to successor corporations under FIFRA, noting that:
 
 
 31
 Oner II had notice of the outstanding debt to the EPA since Saylor served as president of both Del and Oner II. Oner II was formed to continue distributing pesticides, and in Saylor's case maintained the same personnel in a responsible position. Oner II was engaged in the business of distributing pesticides and was thus subject to sanctions by the agency, and we think the sanctions were properly imposed upon it by reason of its having succeeded to operations found to have been conducted in violation of the Act.
 
 
 32
 In view of the enunciated purposes of the Act, the potential injury to the public for violations of the Act and the circumstances surrounding the transfer of assets, the imposition of liability on Oner II was justified.
 
 
 33
 Id. at 186-87.
 
 
 34
 Two key facts distinguish the circumstances surrounding the transfer of assets in this case from Oner II. First, L-Bar did not have actual notice of IMP's potential CERCLA liability. At the time of the asset sale, IMP had not been identified as a potentially responsible party by any state or federal agency and no one had asserted or threatened a claim against IMP for clean up costs. Second, and perhaps more importantly, L-Bar did not continue IMP's slag business. In fact, IMP had ceased its slag business nine months before L-Bar purchased its assets. Because we find this case distinguishable from Oner II, we need not decide whether to adopt the continuing business enterprise exception under CERCLA.
 
 
 35
 Asarco has failed to establish that under traditional concepts of successor liability there is a genuine issue of material fact as to L-Bar's liability as successor to IMP.
 
 IV. Sanctions
 
 36
 L-Bar has requested sanctions under Fed.R.Civ.P. 11, asserting that Asarco has misrepresented facts on appeal. Rule 11 permits, however,
 
 
 37
 [A]n award only of those expenses directly caused by the filing, logically, those at the trial level.... On appeal, the litigant's conduct is governed by Federal Rule of Appellate Procedure 38, which provides: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."
 
 
 38
 Cooter v. Hartmarx Corp., --- U.S. ----, ----, 110 S.Ct. 2447, 2451, 110 L.Ed.2d 359 (1990). We deny sanctions because Rule 11 does not apply here and this appeal was not frivolous under Rule 38.
 
 CONCLUSION
 
 39
 The district court did not err in granting summary judgment to L-Bar because Asarco has failed to establish a genuine issue of material fact as to L-Bar's successor liability under CERCLA.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 This case is distinguishable from Levins Metal Corp. v. Parr-Richmond Terminal Co., 817 F.2d 1448 (9th Cir.1987), where the court applied California state law in determining successor liability under CERCLA. There, the court explained that when the issue deals with the "capacity to be sued" rather than the "imposition of liability," state law applies. In the case at hand, L-Bar does not contest its "capacity to be sued," but instead contends that it "cannot be liable" under CERCLA. Therefore, federal common law applies
 
 
 [2]
 Because of the need for national uniformity in the successor liability area and because of the possibility that CERCLA's purposes could be frustrated by state law, we believe that this case is distinguishable from Mardan v. C.G.C. Music Ltd., 804 F.2d 1454, 1458-60 (9th Cir.1986) (incorporating state law to govern the validity of contractual releases of CERCLA liability). A state law which unduly limits successor liability could cut off the EPA's ability to seek reimbursement from responsible parties for cleaning up a hazardous waste site under 42 U.S.C. Secs. 9604 and 9607. This would result in great expense to the taxpayer, which is contrary to CERCLA's purposes. Cf. Smith Land, 851 F.2d at 92 ("the district court must consider national uniformity; otherwise, CERCLA aims may be evaded easily by a responsible party's choice to arrange a merger or consolidation under the laws of particular states which unduly restrict successor liability")
 
 
 [3]
 Washington and a few other states recognize a fifth exception known as the product-line exception. See, e.g., Ray v. Alad Corp., 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977); Martin, 102 Wash.2d at 615, 689 P.2d at 388. Because Asarco has not argued this exception on appeal, we need not decide whether to adopt it under CERCLA. See United States v. Valentine, 783 F.2d 1413, 1417 n. 5 (9th Cir.1986) ("This claim was not raised on appeal and consequently we do not address it.")
 
 
 [4]
 Citing Jordan v. Clark, 847 F.2d 1368, 1374 n. 6 (9th Cir.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989), Asarco argues that waiver of the rule is appropriate because the district court fully developed the record, even though implied liability was not framed as an additional theory. In Jordan, the parties argued over the relevant issue without framing it as a separate theory of recovery so no additional facts were necessary. Id. Here, the parties did not argue the issue of implied liability, and L-Bar would have brought forth more facts had it been raised as an issue below
 We have recognized two other exceptions to the general rule: (1) when review is necessary to prevent miscarriage of justice or to preserve the integrity of the judicial process, and (2) when a new issue arises during a pending appeal because of a change in the law. See Bolker, 760 F.2d at 1042. Neither exception applies here.
 
 
 [5]
 The cases cited by Asarco for the proposition that continuity of shareholders is not a necessary element do not support its position. In Atlas Tool Co., Inc. v. Commissioner, 614 F.2d 860, 863 (3d Cir.), cert. denied, 449 U.S. 836, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980), one man owned all the stock in both the selling and purchasing corporations. When the asset sale occurred, continuity of shareholder interest was met automatically. Id. at 871. Asarco also relies on United States v. Vertac, 671 F.Supp. 595 (E.D.Ark.1987), vacated without opinion, 855 F.2d 856 (8th Cir.1988). This case is no longer good law. Even if it had not been vacated, continuity of shareholders was met because at the time of the asset sale both companies had common shareholders. Id. at 616
 
 
 [6]
 Exchanging stock of the parent corporation is sufficient to establish continuity of shareholders. See, e.g., Acushnet, 712 F.Supp. at 1016-17
 
 
 [7]
 When applying this exception, courts look at several factors including:
 (1) continuity of employees, supervisory personnel and physical location;
 (2) production of the same product;
 (3) retention of the same name;
 (4) continuity of general business operations;
 (5) purchaser holding itself out as a continuation of the seller.
 Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 175 (5th Cir.1985).