McGAW et al., Appellants,

v.

SOUTH BEND LATHE, INC. et al., Appellees.

[Cite as *McGaw v. South Bend Lathe, Inc.* (1991), 74 Ohio App.3d 8.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900227.

Decided May 8, 1991.

*Richard D. Welch,* for appellants.
*Bloom & Greene Co., L.P.A.,* and *Gordon C. Greene,* for appellees.

*Per Curiam.*

This cause came on to be heard upon an appeal from the Hamilton County Court of Common Pleas.

Plaintiffs-appellants, Christopher and Connie McGaw, have taken the instant appeal from the entry of summary judgment in favor of defendant-appellee, South Bend Lathe, Inc., on their products liability claims seeking recovery for injuries sustained by Christopher McGaw while operating an allegedly defective power press. The appellants advance on appeal two assignments of error.

We address first the appellants' second assignment of error in which they contend that summary judgment was improvidently granted for South Bend Lathe, Inc., when issues of fact remained as to whether South Bend Lathe, Inc., as the "successor" to the manufacturer of the power press on which Christopher McGaw was injured, was liable for its negligent design or manufacture or for any breach of implied warranties in the sale of the press. We find no merit to this contention.

The record before us discloses that power presses of the type upon which Christopher McGaw was injured were first manufactured and marketed by Johnson Machine & Press Company ("Johnson Machine"), which manufactured mechanical presses under the brand name "Johnson." Bontrager Corporation ("Bontrager") subsequently acquired the assets and assumed the liabilities of Johnson Machine and continued to manufacture presses under the "Johnson" name.

In 1959, American Steel Foundries ("ASF"), a New Jersey corporation, acquired the assets and assumed the liabilities of South Bend Lathe Works, an Indiana corporation. ASF subsequently transferred the assets and liabilities acquired from South Bend Lathe Works to its wholly owned subsidiary, South Bend Lathe, Inc., a Delaware corporation ("SBL–Delaware"). In 1962, Amsted Industries, Inc. ("Amsted"), a Delaware corporation and the successor to ASF, purchased the assets of Bontrager and transferred the Bontrager assets to SBL–Delaware. SBL–Delaware thereafter manufactured and sold presses under the "Johnson" trade name.

In 1965, Amsted dissolved its wholly owned subsidiary SBL–Delaware, and the assets and liabilities of SBL–Delaware were transferred to Amsted. Amsted continued to manufacture and market power presses under the "Johnson" name through South Bend Lathe, an unincorporated division of Amsted ("SBL Division").

In April 1975, L.W.E., Inc. ("LWE"), was incorporated in Indiana. Effective June 30, 1975, Amsted sold certain assets of its SBL Division to LWE. On

July 18, 1975, LWE changed its name to South Bend Lathe, Inc. ("SBL–Indiana"), and SBL–Indiana manufactured and marketed presses under the "Johnson" name.

In February 1985, Christopher McGaw was injured while operating a "Johnson" power press in the course of his employment with Whiteway Manufacturing Company (now Spaulding Lighting, Inc.). In December 1985, the appellants instituted the action underlying the instant appeal against SBL–Indiana and Spaulding Lighting, Inc.

The evidentiary material submitted on SBL–Indiana's motion for summary judgment discloses that the press on which Christopher McGaw was injured was manufactured in 1964 by Amsted's wholly owned subsidiary SBL–Delaware and was sold by Amsted to Christopher McGaw's employer, Whiteway Manufacturing Company. It is beyond cavil that Amsted assumed the liabilities of SBL–Delaware in 1965, when SBL was dissolved. The issue before us is whether SBL–Indiana, as the successor of LWE, succeeded to liability for defective products manufactured by SBL–Delaware when LWE purchased assets of Amsted's SBL Division.

Under the traditional rule of successor liability, a corporation that purchases the assets of another corporation does not assume the liabilities of the selling corporation, unless: (1) the purchasing corporation expressly or implicitly agrees to assume the liabilities of the selling corporation; (2) the transaction amounts to a de facto consolidation or merger of the seller and the purchaser; (3) the purchaser is merely a continuation of the seller; or (4) the transaction was entered into fraudulently to escape liability. *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio St.3d 60, 30 OBR 165, 507 N.E.2d 331; *Seibel v. Crown Cork & Seal Co., Inc.* (June 18, 1986), Hamilton App. No. C–850758, unreported, 1986 WL 6817.

The exceptions to the general rule that a purchaser of corporate assets does not assume the liabilities of the seller were developed to protect the rights of the seller's commercial creditors and to protect the voting and appraisal rights of dissenting shareholders. Some courts have found the theoretical underpinnings of the traditional rule, which was developed in the context of corporate law, to be irrelevant in the context of products liability law and thus have endeavored to fashion an approach more responsive to the public-policy considerations underlying products liability law. For example, in *Cyr v. B. Offen & Co.* (C.A.1, 1974), 501 F.2d 1145, the focus of the "mere continuation" exception was shifted from internal continuity to external continuity, *i.e.*, the appearance of the successor corporation to the public. In *Turner v. Bituminous Cas. Co.* (1976), 397 Mich. 406, 244 N.W.2d 873, the Michigan Supreme Court held with respect to the mere-continuation exception that the traditional

requirement of continuity of shareholders was not crucial and that the relevant factors were (1) the basic continuity of the seller's enterprise, including the retention of key personnel, assets, physical location, general business operations, and name; (2) the seller's cessation of ordinary business operations, liquidation and dissolution soon after the sale; (3) the purchaser's assumption of the liabilities and obligations of the seller necessary for the uninterrupted continuation of the seller's normal business operations; and (4) the purchaser's representation of itself as the effective continuation of the seller. In *Ray v. Alad Corp.* (1977), 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3, the California Supreme Court abandoned the traditional rule and established what has come to be known as the "product-line" approach, under which the purchaser of the assets of a business that continues to manufacture the same product line assumes liability for its predecessor's products.

The Ohio Supreme Court in *Flaugher v. Cone Automatic Machine Co., supra,* declined to abandon the traditional rule for the *Ray* product-line approach, but, by implication, adopted the "expanded view of continuity" that has emerged from the *Cyr* and *Turner* cases. *Id.,* 30 Ohio St.3d at 64–65, 30 OBR at 170, 507 N.E.2d at 336. Applying the traditional rule, with the "expanded view" of the continuity exception, we hold that, on the evidence before us, summary judgment was properly entered for SBL–Indiana.

Factors relevant to the fraud exception to the general rule of nonliability include inadequate consideration or a lack of good faith. See *Turner, supra* (Coleman, J., dissenting). The appellants do not contend and there is no evidence to suggest that the consideration paid by LWE for the assets of Amsted was less than adequate or that the transaction was structured with an intent to defraud.

Nor does the evidence disclose a basis for a finding that LWE expressly or implicitly assumed liability for injuries caused by defective products manufactured by Amsted or its predecessors. Under the June 30, 1975 agreement, pursuant to which LWE agreed to purchase and Amsted agreed to sell "the business and certain assets of [Amsted's] SBL Division," LWE assumed liability for losses, damages and expenses incurred as a result of products liability claims for products shipped after June 30, 1975, but expressly declined to "assume any other liability of Amsted arising out of defects or alleged defects in said products shipped by Amsted prior to July 1, 1975."

Pursuant to R.C. 1701.82(A)(3) and (4), the merger of two or more corporations vests in the surviving corporation "all obligations belonging to * * * each of the constituent corporations * * * without further act or deed * * * [and] the surviving * * * corporation is liable for all the obligations of

each constituent corporation * * *."[1]  An asset purchase is subject to the legal consequences of a merger under the de facto merger exception if: (1) there is a continuation of the enterprise of the seller in terms of continuity of management, personnel, physical location, assets, and operations; (2) there is a continuity of shareholders, accomplished by payment for the assets with shares of stock; (3) the seller ceases operations, liquidates, and dissolves as soon as legally and practically possible; and (4) the purchasing corporation assumes the obligations of the seller necessary for the uninterrupted continuation of business operations.  *Louisiana–Pacific Corp. v. ASARCO, Inc.* (C.A.9, 1990), 909 F.2d 1260.  The Amsted–LWE asset transaction involved neither a continuity of shareholders nor the prompt extinction of Amsted following the transfer.  Therefore, the de facto merger exception will not operate to take the Amsted–LWE transaction out of the general rule of nonliability.

Courts have not established a uniform set of factors for the mere-continuation exception as it has traditionally been applied.  The "expanded view" of the continuity exception developed by the Michigan Supreme Court in *Turner, supra,* which is also known as the "continuing business enterprise exception," see *Bonee v. L & M Constr. Chemicals* (M.D.Tenn.1981), 518 F.Supp. 375, is, in essence, a recasting of the de facto merger exception, dispensing with the traditional requirement of shareholder continuity, while adding the *Cyr* factor of external continuity, *i.e.,* the purchaser's representation of itself as the effective continuation of the seller.  As with the de facto merger exception, the continuity exception will not operate to impose successor liability on SBL–Indiana in the absence of the seller's prompt extinction after the transfer.  *See Flaugher, supra,* 30 Ohio St.3d at 65, 30 OBR at 170, 507 N.E.2d at 336.

Civ.R. 56(E) provides that the party opposing a motion for summary judgment that is supported by evidentiary material may not rest upon the allegations of his pleading but must, by affidavit or otherwise, set forth specific facts to demonstrate the existence of a genuine issue of fact for trial. In the absence of some evidence that SBL–Indiana, by virtue of its predecessor's purchase of assets of Amsted, assumed the liability of Amsted for defective products manufactured by SBL–Delaware, we hold that no genuine issue of material fact remained for trial and that SBL–Indiana was entitled to judgment in its favor as a matter of law.  We, therefore, overrule the second assignment of error.

---

1.  R.C. 1701.01(V) defines a "constituent corporation" as "an existing corporation that is participating with one or more other corporations in a merger * * *."

■ The appellants contend in their first assignment of error that the trial court erred in granting SBL–Indiana's motion for a protective order to prevent the appellants from deposing the person designated by SBL–Indiana as the custodian of records regarding the press on which Christopher McGaw was injured. This contention is untenable.

Civ.R. 26(C) provides in relevant part:

"Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had * * *."

An appellate court will not reverse a protective order in the absence of some demonstration that the trial court abused its discretion. See *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 29 OBR 441, 505 N.E.2d 957.

■ To be discoverable, the matter sought to be discovered must be "relevant to the subject matter involved in the pending action." Civ.R. 26(B)(1). The appellants in their notice to take deposition *duces tecum* sought discovery through deposition testimony and the production of documents by the records custodian of information regarding the design, manufacture, sale and maintenance of the press on which Christopher McGaw was injured. SBL–Indiana presented by way of answers to interrogatories uncontroverted proof that the press on which Christopher McGaw was injured was not manufactured or sold by SBL–Indiana, which did not begin to manufacture "Johnson" presses until 1975, but was manufactured and sold by Amsted's wholly owned subsidiary SBL–Delaware in 1964. The matters sought to be discovered were, therefore, relevant to the appellants' products liability claims only if SBL–Indiana assumed Amsted's liability for defective products manu-· factured by SBL–Delaware. As we determined *supra,* it did not. We, therefore, hold that the trial court did not abuse its discretion in granting SBL–Indiana's motion for a protective order when the matters sought to be discovered were rendered irrelevant by a failure of proof on the issue of successor liability. Accordingly, we overrule the first assignment of error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GORMAN, P.J., SHANNON and DOAN, JJ., concur.