CITY OF PHOENIX, ARIZONA,
Plaintiff,

v.

GARBAGE SERVICES COMPANY,
an Arizona corporation; et al.,
Defendants.

No. C 89–1709 SC.

United States District Court,
D. Arizona.

April 5, 1993.

Craig J. Reece, City Attorney's Office, Phoenix, AZ, for plaintiff City of Phoenix.

Barry Sandals, Robin Shapiro, and Paula Bennett, Morrison & Foerster, San Francisco, CA, for defendant Valley Nat. Bank.

John Gill, Michael F. Crotty, and Thomas J. Greco, American Bankers Ass'n, Washington, DC, on brief for amicus curiae American Bankers Ass'n.

Michael L. Graham and Philip M. Lindquist, Baker & Botts, Dallas, TX, on brief for amicus curiae National Trust Real Estate Ass'n.

G. Van Velsor Wolf, Jr. and Martha E. Gibbs, Smell & Wilmer, Phoenix, AZ, on brief for amicus curiae Arizona Bankers Ass'n.

Theodore V.H. Mayer, Hughes Hubbard & Reed, New York City, on brief for amici curiae IBJ Schroder Bank and Trust Co., The Northern States Trust Co., and U.S. Trust Co. of New York.

## ORDER ON MOTION TO LIMIT TRUSTEE'S LIABILITY TO AMOUNT OF ASSETS HELD IN TRUST

CONTI, District Judge.*

### I. INTRODUCTION

This is an action filed by the City of Phoenix pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607. The City seeks to recover response costs incurred in cleaning up a contaminated landfill site.

Section 107 imposes liability for response costs on any owner of contaminated property, subject only to certain enumerated defenses. In a previous order, this court held that defendant Valley National Bank ("VNB") can be liable as an owner because it held title to the landfill site as trustee of a testamentary trust. VNB now moves for partial summary judgment, seeking an order limiting its liability to the extent that the trust's assets are sufficient to indemnify it.

### II. FACTS

Wilbur Calvin Estes owned a landfill site located in the bed and on the south bank of the Salt River, between 40th and 48th Streets in Phoenix, Arizona (the "Landfill"). On April 22, 1965, Mr. Estes conveyed the Landfill to Mr. and Mrs. Paul Van Leer and Mr. and Mrs. John Latimore. However, Mr. Estes retained an option to purchase the Landfill.

Mr. Estes died testate on December 25, 1965. His will nominated VNB as executor, and VNB agreed to assume the role. The will also provided for a testamentary trust, and conveyed the balance of Mr. Estes' property, including the option to purchase the landfill, to VNB "as trustee." VNB, acting on behalf of Mr. Estes' estate, exercised the option to purchase the Landfill on March 22, 1966. A warranty deed conveyed the property to VNB "as trustee."

---

* Samuel Conti, U.S. District Judge, N.D.Cal., was sitting by designation.

At the time VNB purchased the Landfill, Garbage Services Company ("GSC") was managing the property. Mr. Estes had been the president of GSC, and owned 100% of its stock. VNB now held this stock as an asset of the trust formed by Mr. Estes' will. VNB placed the attorney for Mr. Estes' estate and trust, Richard Minne, on GSC's board of directors.

VNB continued the previous owners' practice of leasing the site to GSC. VNB paid property taxes and procured liability insurance for the Landfill, but it did not become involved in the day-to-day administration of the site. VNB did not enter into or negotiate contracts for the disposal of wastes at the Landfill, leaving such matters entirely to GSC. According to VNB, its communication with GSC was limited to matters involving Estes' estate, such as tax questions, and not the operation of the Landfill. GSC continued to operate the Landfill until 1972, after which time the Landfill was closed and the site unused.

In 1980, the City of Phoenix initiated condemnation proceedings by which it eventually acquired the entire Landfill.[1] The Final Judgment of Condemnation (Second Amended) found that "defendant Valley National Bank of Arizona, as trustee under [Estes's will], is record owner [the Landfill]."

In 1989, the City of Phoenix filed this action to recover response costs incurred in cleaning up hazardous substances allegedly deposited while the Landfill was an asset of Mr. Estes' estate. This court held that the litigation in the condemnation proceedings estopped VNB from claiming that it was not trustee of Mr. Estes' estate. (Order dated January 19, 1993, 816 F.Supp. 564.) The court also held that a trustee is a property owner under CERCLA section 107, and thus is liable for response costs. *Id.*

In a status conference on January 19, 1993, VNB asserted that because it owned the Landfill only in its capacity as trustee, it was not personally liable for the City's response costs. VNB argued that its liability should be limited to the amount of the assets held in trust. The court invited briefing on this issue.

VNB now moves for partial summary judgment, seeking an order limiting its liability. In addition, the American Banker's Association, the Arizona Banker's Association, the National Trust Real Estate Association, and several other banks and trust companies[2] have filed *amicus curiae* briefs on behalf of VNB.

## III. DISCUSSION

Section 107(a) of CERCLA imposes liability for response costs on any owner of property from which there is a release or threatened release of hazardous substances into the environment. 42 U.S.C. § 9607(a). A trustee, as the holder of legal title to property, is an "owner" under the meaning of this section. (Order dated January 19, 1993.) However, nothing in the statute or its legislative history expands on whether Congress intended a trustee to bear personal liability for response costs, or if a trustee's liability instead is limited to the extent that the trust's assets are sufficient to indemnify him.

### A. *Federal Common Law Applies Where CERCLA is Silent*

As one court noted, "[i]t is not surprising that, as a hastily conceived and briefly debated piece of legislation, CERCLA failed to address many important issues." *Smith Land & Improvement Corp. v. Celotex Corp.,* 851 F.2d 86, 91 (3d Cir.1988). "The meager legislative history available indicates that Congress expected the courts to develop a federal common law to supplement the statute." *Louisiana–Pacific Corp. v. Asarco, Inc.,* 909 F.2d 1260, 1263 (9th Cir.1990) (citing *Smith Land,* 851 F.2d at 91).

When developing federal common law, the court must decide whether to fashion a nationally uniform federal rule, or incorporate state law as the federal rule of decision.

---

1. The City of Phoenix and the State of Arizona had acquired portions of the site in earlier condemnation proceedings.

2. The IBJ Schroder Bank and Trust Company, the Northern States Trust Company, and United States Trust Company of New York also have joined in filing an *amicus* brief in support of VNB.

*United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–28, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979). The court must balance two competing concerns: the extent to which a uniform federal rule is required to further the objectives of the federal program; and the need to avoid disrupting existing commercial relationships predicated on state law. *See id.* at 728–29, 99 S.Ct. at 1458–59.

The Ninth Circuit Court of Appeals has taken both approaches when filling in the gaps left by CERCLA, depending on the context. *Compare Asarco*, 909 F.2d at 1263 (fashioning uniform federal rule for liability of successor corporations under CERCLA), *with Mardan v. C.G.C. Music Ltd.*, 804 F.2d 1454, 1458–60 (9th Cir.1986) (incorporating state law to govern the validity of contractual releases of CERCLA liability).

■ On the balance, this court finds that the important federal policies behind CERCLA require the court to fashion a uniform federal rule of decision to decide the case at bar. The court follows the lead of the Ninth Circuit in *Asarco*. In that case, the Ninth Circuit fashioned a uniform federal rule governing the liability of successor corporations under CERCLA. 909 F.2d at 1260. In doing so, however, the court drew heavily from the traditional rules in operation in most states on successor liability, so as to disrupt existing commercial relationships predicated on state law as little as possible. *Id.*

The rule of decision in this case, then, is best fashioned from the existing common law on trustee liability. The law governing trustee liability is well settled, and is nearly uniform throughout all jurisdictions.

B. *The Common Law on Trustee Liability Applied to CERCLA*

The City, VNB, and *amici* all agree that the Restatement (Second) of Trusts fairly represents the common law on issues of trustee liability in most jurisdictions. "By adhering to the rules set forth in the Re-

statement, we also further the interest in achieving uniformity in the articulation of federal common law that governs CERCLA's interstices." *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 268 n. 26 (3d Cir.1992) (fashioning federal common law rule of divisibility of harm from Restatement (Second) of Torts). The court thus turns to the relevant provisions in the Restatement (Second) of Trusts for guidance in fashioning the rule of decision in this case.

Section 264 of the Restatement provides:

**§ 264. Liability of Trustee for Tort**

The trustee is subject to personal liability for torts committed in the course of the administration of the trust to the same extent that he would be liable if he held the property free of trust.

Restatement (Second) of Trusts § 264. However, section 265 provides:

**§ 265. Liability of Trustee as Title Holder**

Where a liability to third persons is imposed upon a person, not as a result of a contract made by him or a tort committed by him but because he is the holder of title to property, a trustee as holder of the title to the trust property is subject to personal liability, but only to the extent to which the trust estate is sufficient to indemnify him.

Restatement (Second) of Trusts § 265.

VNB and *amici* rely almost exclusively on section 265 of the Restatement. They contend that CERCLA "created a new species of liability arising from nothing more than the mere fact of property 'ownership.'" (VNB's reply mem. at 2.) According to VNB and *amici*, then, a trustee that is held liable as a property owner under CERCLA is not personally liable beyond the amount of the assets held in trust.

This argument disregards CERCLA's status as a type of environmental tort.[3] Liability does not arise from the mere fact of property ownership, but from the fact that

---

3. The floor debates on the legislation are replete with references to the common law tort of strict liability for ultrahazardous activities. *See, e.g.,* 126 Cong.Rec. H9,462 (daily ed. Sept. 23, 1980) (remarks of Rep. Gore). "For the purposes of [CERCLA], Congress declares that manufacture,

use, transportation, treatment, storage, disposal and release of hazardous substances are ultrahazardous activities." 126 Cong.Rec. S14,972 (daily ed. Nov. 24, 1980) (remarks of Sen. Tsongas).

property one owns (or previously owned) presents a potential environmental hazard. Environmental hazards do not just happen, as VNB and *amici* suggest; rather, somebody at some time used the property for the disposal of hazardous substances.

CERCLA creates two distinct types of tort liability for owners of contaminated property, notwithstanding the owner's degree of involvement with the hazardous substances. Section 107(a) imposes liability for response costs on:

> (1) the owner ... of a vessel or facility, [or]
>
> (2) any person who *at the time of disposal of any hazardous substances* owned ... any facility at which such hazardous substances were disposed of.

42 U.S.C. § 9607(a) (emphasis added). The difference between subsection 107(a)(1) and subsection 107(a)(2) must be kept in mind when applying the general principles of trustee liability to trustee liability as an owner of contaminated property under CERCLA.

Subsection 107(a)(1), by its terms, imposes liability on current owners of property from which there is a release or threatened release of hazardous substances, regardless of when or how the property became contaminated. 42 U.S.C. § 9607(a)(1). Liability under this subsection is based on Congress' judgment that among innocent parties, the current owner of contaminated property should bear at least part of the burden of environmental cleanup. Liability under this subsection, as VNB and *amici* suggest, truly is imposed on a defendant because of the mere fact of property ownership.

Thus, if a trustee is held liable under subsection 107(a)(1) as the current owner of contaminated property, the trustee's liability would arise solely because he held title to the contaminated property. Under traditional common law principles, the trustee's liability would be limited to the amount of the assets held in trust. *See* Restatement (Second) of Trusts § 265.

By contrast, subsection 107(a)(2) imposes liability on current or past owners, provided that they owned the site at the time of disposal of the hazardous substances. In enacting CERCLA, the legislature in effect codified the common law rule of strict liability for ultrahazardous activities, and classified the disposal of hazardous substances as an ultrahazardous activity.[4] Thus, when a property owner allows his property to be used for the disposal of hazardous substances, subsection 107(a)(2) imposes strict liability for any damages due to a release or threatened release of the hazardous substances into the environment. Liability under this subsection is not based on mere ownership of property, but on the property owner's decision to allow his property to be used for an ultrahazardous activity. The rationale of subsection 107(a)(2), then, is that the owner has both the power and the responsibility to control the use of his property.

This rationale does not automatically lend itself to situations where a trustee owned the property. A trustee has the power to determine the use of trust property only if the trust instrument so provides, or it is necessary to carry out the purposes of the trust. *See* Restatement (Second) of Trusts § 186. The trust instrument of course may strip the trustee of this power. In addition, sometimes the terms of a trust give a third person the exclusive power to control the actions of the trustee with respect to the use of the property. In such cases, the trustee's sole duty is to abide by the third person's wishes, provided they do not violate the terms of the trust. *See* Restatement (Second) of Trusts § 185.

When a trustee owned property at the time it was contaminated, the rationale for property owner liability under subsection 107(a)(2) only applies where the trustee had the power to control the use of trust proper-

---

4. *This common law rule of strict liability is modified only by the inclusion of the extremely limited list of defenses found in section 107(b). That section in essence provides a defense if the defendant was not at fault, but only where the release of hazardous substances was caused solely by (1)* an act of God, (2) an act of war, or (3) an act or omission of a third party, except for an act or omission in connection with a contractual relationship with the defendant. *See* 42 U.S.C. § 9607(b).

ty. In the view of this court, the extent of the trustee's personal liability therefore depends on whether the trustee had such power at the time the trust property was used for the disposal of hazardous substances.

For instance, if a trustee has control over trust property, and knowingly allows it to be used for the disposal of hazardous substances, then it is the trustee who is responsible for the decision to use the property for an ultrahazardous activity. The trustee is not liable merely because he held title to the property, but because it was in his power to control the use of the property, and he opted to use it for the disposal of hazardous substances. Although the trustee's status as the holder of legal title is the vehicle by which subsection 107(a)(2) imposes liability, there would not be any liability but for the trustee's decision. This liability, therefore, is incurred in the course of administration of the trust, and the trustee is personally liable regardless of the trust's ability to indemnify him. *See* Restatement (Second) of Trusts § 264.

But in situations where the trust instrument strips the trustee of power to control the trust property, the trustee cannot be held personally liable beyond the amount of the assets held in trust. As stated above, the rationale for imposing liability on an owner under subsection 107(a)(2) is that the owner has the authority to determine whether the property is used for the handling or disposal of hazardous substances. If the trustee does not have the power to make decisions about the use of trust property, then this rationale is no longer applicable. Unfortunately,

CERCLA casts too wide a net; the trustee, as the holder of legal title, is still liable as an "owner" of the property under CERCLA.[5] However, since liability in these situations can be based only upon the trustee's status as the holder of legal title, common law principles of trustee liability demand that the trustee's liability be limited to the extent the trust assets are available to indemnify him. *See* Restatement (Second) of Trusts § 265.

■ Applying the common law of trustee liability to CERCLA thus leads to the following general rules governing the CERCLA liability of trustees as owners of contaminated property:

(1) Where a trustee is held liable under subsection 107(a)(1) as the current owner of contaminated property, the trustee's liability is limited to the extent that the trust assets are sufficient to indemnify him.

(2) Where a trustee is held liable under subsection 107(a)(2), but the trustee did not have the power to control the use of trust property, the trustee's liability is limited to the extent that the trust assets are sufficient to indemnify him.

(3) Where a trustee had the power to control the use of trust property, and knowingly allowed the property to be used for the disposal of hazardous substances, then the trustee is liable under subsection 107(a)(2) to the same extent that he would be liable if he held the property free of trust.

These rules are consistent with the stated position of the Environmental Protection Agency (EPA) on these issues.[6] The EPA

---

**5.** The district courts of Illinois have held that trustees of an Illinois land trust are not "owners" under CERCLA, even though they hold legal title. *United States v. Petersen Sand and Gravel, Inc.,* 806 F.Supp. 1346, 1359 (N.D.Ill.1992); *Premium Plastics, Inc. v. LaSalle National Bank,* 1992 U.S.Dist. WL 309561, at *3 (N.D.Ill. Oct. 22, 1992); *United States v. N.L. Industries,* 1992 U.S.Dist. WL 359986, at *2 (S.D.Ill. Apr. 23, 1992). Under the terms of an Illinois land trust, the beneficiary (or his agent) retains the power to direct or control the trustee in dealing with the title, and also has exclusive control of the management, operation, renting and selling of the trust property. *See N.L. Industries,* 1992 WL 359986 at *1.

This court disagrees with the holding in these cases that these trustees are not "owners" of the

trust property. "From the traditional point of view it would seem that the trustee is the legal owner of the trust property and is subject to the duties and responsibilities of an owner as far as the outer world is concerned." 2A *Scott on Trusts* § 265.4 (4th ed. 1988). However, a trustee's CERCLA liability in these situations is necessarily limited to the extent the trust is sufficient to indemnify him; under no circumstances could the trustee's personal assets be reached. Thus, this court would have reached the same practical result in the above cases as did the Illinois courts, albeit under different reasoning.

**6.** The EPA is the federal agency charged with much of the enforcement of CERCLA. As such, the EPA's positions on enforcement of the statute are entitled to deference by this court.

has issued a rule on lender liability which substantially reduces the circumstances under which a lender can be held liable under CERCLA. 57 Fed.Reg. 18,344 (1992) (to be codified at 40 C.F.R. § 300). In the preamble to this rule, the EPA discusses the reasons why the rule does not also include special protection for trustees. The EPA believes that trust assets should be available for cleanup whenever trust property is contaminated. *See id.* at 18,349. This suggests that, in the EPA's view, a trustee is liable under CERCLA at least to the extent that trust assets are sufficient to indemnify him. But the EPA also states that "innocent" trustees are not personally liable under CERCLA beyond the amount of the assets held in trust. *See id.*

VNB and *amici* place great weight on the EPA's reference to "innocent" trustees. However, trustees that the EPA characterizes as "innocent" are those "that would have no way of knowing whether the trust's property was contaminated, nor would they have been able to have prevented the contamination." *Id.* This position is consistent with the rules fashioned by this court. A trustee who is "innocent" under the EPA's view would not be personally liable under CERCLA beyond the amount of the trust's assets. By contrast, a trustee who controls trust property and knowingly allows it to be used for the disposal of hazardous substances is not "innocent" under the EPA's usage of the term.

The *amici* have expressed concern that they may be nominated as trustee of a testamentary trust, or named as trustee of a revocable land trust, and later be left shouldering the full weight of the cleanup costs if the trust is found to contain contaminated real estate. They assert that prior to accepting appointment as trustee, they often do not have enough time or resources available to conduct the exhaustive inquiry required to determine whether the trust is free of any potential environmental hazards. Nor is it economically efficient, they argue, for banks and trust companies to do so. As long as the spectre of unlimited trustee liability under CERCLA remains, the only sound business practice for banks and trust companies, according to *amici*, is to decline appointment as trustee whenever there is a possibility that the trust contains contaminated real estate.

This concern is unwarranted. Under the general rules governing a trustee's CERCLA liability set forth above, if the contamination of the trust property occurred entirely before the creation of the trust, the trustee's liability would be limited to the amount of assets held in trust. The court also notes that in these situations the "innocent owner" defense of CERCLA section 107(b)(3) often would be available to the trustee.[7]

Also, as mentioned above, if the terms of the trust document strip the trustee of the power to control the use of the trust property, as do many inter vivos land trusts, the trustee's liability would be limited to the extent that the trust assets are sufficient to indemnify him.

The only trustees that need fear liability beyond the extent that the trust's assets can indemnify them are those that possess control over the use of trust property and knowingly allow the property to be used for the disposal of hazardous substances. To limit the liability of a trustee in this situation would frustrate the purposes of CERCLA, by making the person who is most responsible for the decision to use the property for

---

7. CERCLA section 107(b)(3) relieves an owner from liability where the contamination was caused solely by an act or omission of a third party other than an employee or agent of the defendant, or other than one whose act or omission occurred in connection with a contractual relationship with the defendant. 42 U.S.C. § 9607(b)(3). The defendant also must show that he used due care with respect to the hazardous substance, and that he took reasonable precautions against the foreseeable acts or omissions of third parties. *Id.*

The statute further provides that the deed, land contract, or other instrument used to transfer title is not a "contractual relationship" if the hazardous substances were placed on the property before the defendant purchased it, and the defendant did not know and had no reason to know that hazardous substances had been disposed of on the property. *See* 42 U.S.C. § 9601(35)(A)(i).

the disposal of hazardous substances unaccountable.

*Amici* submit that a trustee should not be held personally liable beyond the amount of the assets held in trust unless the trustee is somehow at fault. This argument completely ignores the fact that CERCLA is not a fault-based scheme. Liability of property owners under CERCLA is based on the concept that the disposal of hazardous substances is an ultrahazardous activity. The statute reflects Congress' decision that persons who enter into the business of hazardous waste disposal must bear liability for any release of the hazardous substances, even if they were not at fault. Liability is based on the defendant's decision to engage in the ultrahazardous activity, not on the defendant's culpability. *See Nurad, Inc. v. Hooper & Sons Co.,* 966 F.2d 837, 846 (4th Cir.1992) ("The trigger to liability under § 9607(2) is ownership or operation at the time of disposal, not culpability or responsibility for the contamination.").

Accordingly, the court holds that where a trustee had power to control the use of trust property, and knowingly allowed the property to be used for the disposal of hazardous wastes, the trustee is personally liable for response costs under CERCLA section 107(a)(2) regardless of the trust's ability to indemnify him. The court now turns to the facts of the case at bar.

Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c). The trust instrument in this case provided that "[VNB] shall have full power to hold, manage, operate, control ... lease, improve and repair" trust property. Further, VNB was vested with "all the powers, prerogatives and discretions that an absolute owner of property has or may have, ... as in its sole discretion [VNB] may deem advisable for the best interests of said estate." Thus, VNB, as trustee, had the authority to control the use of trust property as a matter of law.[8]

■■■ VNB, as trustee, made the decision to purchase a currently operating waste disposal site as a trust asset. It also decided to continue leasing the Landfill to GSC for use as a facility for the disposal of hazardous substances.[9] Either of these facts standing alone would be enough for the court to impose personal liability on VNB. If the City can prove at trial that hazardous substances were disposed of at the Landfill during the time that VNB owned it, VNB is liable under subsection 107(a)(2) regardless of the amount of the trust assets available to indemnify it.[10] Therefore, VNB's motion for partial summary judgment limiting its liability to the amount of assets held in trust must be denied.

## IV. CONCLUSION

In accordance with the foregoing, VNB's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

---

**8.** Whether a trustee has power to control trust property is an issue of construction of the terms of the trust instrument, or of a statute if applicable. It is a question of law, not of fact.

**9.** The court is aware that VNB made this decision before CERCLA existed. However, Congress intended CERCLA to apply retroactively. *United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 732–34 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *see Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 817 F.2d 1448 (9th Cir.1987) (assuming *arguendo* that CERCLA applies retroactively).

**10.** This assumes that VNB cannot prove at trial its asserted defense of third-party causation under section 107(b)(3), 42 U.S.C. § 9607(b)(3). The merits of the City's motion for summary judgment on VNB's 107(b)(3) defense are not addressed in this Order.