ONAN CORPORATION, a Delaware Corporation, Plaintiff,

v.

INDUSTRIAL STEEL CORPORATION, a Minnesota corporation, and George J. Rutman, Defendants.

Civ. No. 3–88–0877.

United States District Court, D. Minnesota, Third Division.

June 21, 1989.

---

Maclay R. Hyde, Nancy A. Quattlebaum, Gregory Merz, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff.

Geoffrey P. Jarpe, Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, Minn., for defendants.

Kathleen L. Winters, Sp. Asst. Atty. Gen. for the State of Minnesota, St. Paul, Minn., filed an amicus memorandum on behalf of the Minnesota Pollution Control Agency.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the court on the motions of defendants Industrial Steel Corporation (Industrial Steel) and George J. Rutman to dismiss this action in its entirety. For the reasons set forth below the court grants defendants' motions.

*Factual Background*

Prior to 1979 Industrial Steel was a Minnesota corporation that manufactured steel drums and reconditioned used drums in St. Paul, Minnesota. George J. Rutman was the president, treasurer and member of the board of directors of Industrial Steel. The corporation closed its manufacturing operations in 1978 and ceased occupying the plant site in 1979. Industrial Steel also sold its physical assets and conducted no business after 1979.

Plaintiff Onan Corporation (Onan) commenced this action against Rutman and Industrial Steel in order to recover a share of the costs relating to the cleanup of a hazardous waste site located in Andover, Minnesota. Onan has borne these costs as a result of entering into a consent order with the Environmental Protection Agency (EPA) and the Minnesota Pollution Control Agency (MPCA). Several other companies have entered into the consent order as well (collectively the settling parties). Industrial Steel and a number of other companies allegedly involved with the Andover site (the non-settling parties) have refused to join in the consent decree.

The Andover site is a landfill that opened in 1963. Waste Disposal Engineering (WDE) purchased the landfill in 1968 and Waste Control, Incorporated (Waste Control), a related company, began transporting waste materials to the site at that time. Over fifty companies, including Onan and Industrial Steel, contracted with Waste Control for the disposal of waste materials. WDE received a permit to open a hazardous waste disposal site at the landfill and

opened a hazardous waste pit there in November of 1972.

In January of 1983 the Minnesota Department of Health issued a well advisory due to contamination from the Andover hazardous waste pit. The MPCA issued a formal Request for Information (RFI) to Industrial Steel on July 26, 1983. In the RFI the MPCA sought information regarding Industrial Steel's dealings with Waste Control and the landfill owned by WDE. On September 2, 1983, Industrial Steel adopted a resolution of voluntary dissolution. Rutman, who was designated as the trustee in dissolution of the company, filed a formal certificate of voluntary dissolution with the Minnesota Secretary of State on October 28, 1983. In the meantime, on October 20, Industrial Steel had received a letter from the MPCA informing Industrial Steel that WDE had failed to take remedial action at the Andover site and that both the EPA and the MPCA would be investigating the matter.

On November 23, 1983, the MPCA notified Industrial Steel that the MPCA considered Industrial Steel to be a potentially responsible person with respect to cleanup costs at the Andover waste site. Rutman responded in a letter that Industrial Steel had been out of business for several years and that the company had been dissolved. On March 16, 1984, the MPCA sent Industrial Steel a copy of the consent order which had been negotiated and lists of both the settling and non-settling parties. Although Industrial Steel refused to sign the consent order, the company complied with the MPCA's request for responsive action and provided the MPCA with a summary of its dealings with Waste Control. Industrial Steel fashioned its response from information provided by Hyman Simes and Jerry Berke, former Industrial Steel employees.

In December of 1984 Industrial Steel, aware of possible claims against it for cleanup costs, instituted an action against one of its insurance carriers. A month later, Industrial Steel added two other insurance companies to the suit. Industrial Steel sued the insurance carriers to obtain a declaratory judgment of the insurers'

duties under the policies previously in force. The Ramsey County District Court granted summary judgment for Industrial Steel, and the insurers appealed. The Minnesota Court of Appeals affirmed in part but reversed the grant of summary judgment, remanding the case to the district court. *See Industrial Steel Container v. Fireman's Fund,* 399 N.W.2d 156 (Minn.Ct.App.1987). Before any further proceedings could take place one of the insurers notified Industrial Steel that it was insolvent, and the other two admitted coverage for claims arising from contamination at the Andover waste site.

Onan filed the instant action on October 28, 1988. The complaint alleges five counts against Industrial Steel, two counts against Rutman and requests the court to appoint a receiver for the undistributed assets of Industrial Steel. The law suit is essentially a contribution action based on the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., and the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. § 115B.03. Defendants move for dismissal of the action on the grounds that under Minnesota law Industrial Steel has no capacity to be sued beyond the three-year period following the date on which the company filed its certificate of voluntary dissolution. Rutman contends that his capacity to be sued as a trustee or shareholder of Industrial Steel is also subject to the three-year limitation. Thus defendants contend that the action must be dismissed in its entirety.

## Analysis

For purposes of a motion to dismiss the court must accept the factual allegations of the complaint as true. The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In this motion the only disputed issue of law is whether the defendants had the capacity to be sued at the time Onan filed this action.

Fed.R.Civ.P. 17(b), which governs an entity's capacity to sue or be sued in federal court, provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Rule 17(b) is a codification of the basic principle of the law of corporations recognized by Chief Justice Taft in *Oklahoma Natural Gas Co. v. State of Oklahoma,* 273 U.S. 257, 259–60, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1927):

> [C]orporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. The matter is not really procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being.

The Supreme Court reaffirmed Chief Justice Taft's statement of the law in *Chicago Title & Trust Co. v. Forty-one Thirty-six Wilcox Bldg. Corp.,* 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937). In that case an Illinois corporation which had been dissolved for four years filed a petition for reorganization under the United States bankruptcy laws. The Court refused to allow the corporation to maintain its action because under Illinois law the corporation no longer had the capacity to sue. The Illinois statute governing corporate dissolutions authorized actions for only two years following dissolution. The court foreclosed any further action by the dissolved corporation, stating:

> The decisions of this court are all to the effect that a private corporation in this country can exist only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person.

*Id.* at 124–25, 58 S.Ct. at 127.

■ Minnesota law with respect to the capacity of a dissolved corporation to sue or be sued is similar to the provisions at issue in *Chicago Title.* Minn.Stat. § 301.56 (1982), the statute in effect at the time of Industrial Steel's dissolution, provides:

> When a corporation has been completely wound up ... the trustee or trustees shall sign and acknowledge a certificate stating that the corporation has been completely wound up and is dissolved. The ... certificate of dissolution shall be filed for record with the secretary of state and thereupon the corporate existence shall terminate.

The corporate survival provision is set forth in Minn.Stat. § 300.59:

> [A] corporation whose existence terminates by limitation, forfeiture, or otherwise continues for three years after the termination date for the sole purpose of prosecuting and defending actions, closing its affairs, disposing of its property, and dividing its capital.

These statutory provisions modify the common law rule that a corporation ceases to exist for any purpose at the time of dissolution. "To obviate this harsh rule the legislature enacted the predecessor to section 300.59 which extended the life of a dissolved corporation for a specific term." *Mattson v. Underwriters at Lloyds of London,* 385 N.W.2d 854, 857 (Minn.Ct. App.1986) (citations omitted). Balanced against the legislature's concern for the problem of corporations dissolving in order to avoid liability is the need to allow corporations to die a natural death. "[T]he purpose of both the common law rule and the survival statutes is to provide a definite point in time at which the existence of a corporation and the transaction of its business would be terminated...." *Id.* at 858. The Minnesota Supreme Court has acknowledged that a corporation in voluntary dissolution may be sued only within the statutory three-year period. *See Mississippi Valley Development Corp. v. Colonial Enterprises, Inc.,* 300 Minn. 66, 217 N.W.2d 760 (1974); *Kopio's, Inc. v. Bridgeman Creameries,* 248 Minn. 348, 79 N.W.2d 921 (1957).

In this case Industrial Steel filed a certificate of voluntary dissolution on October

28, 1983, and openly disclosed this fact to both the MPCA and the EPA in December of 1983. Onan did not initiate this law suit until October 28, 1988, a full five years after Industrial Steel formally dissolved. This action clearly falls outside of the three-year survival period. Therefore, Onan has attempted to sue a corporation that was no longer in existence.

Onan contends that even though the three-year period has run, Industrial Steel may be sued because both CERCLA and MERLA preempt any state law inconsistent with the underlying purpose of CERCLA and MERLA, that is, to hold responsible parties liable for hazardous wastes. Onan argues that if Industrial Steel attempts to use Minn.Stat. § 300.59 as a shield to protect itself from CERCLA and MERLA liability, then § 300.59 is inconsistent with the purposes of CERCLA and MERLA. Therefore, Industrial Steel's dissolution should be ineffective.

This court is aware of the threat to health and safety caused by hazardous wastes in our society and the need for strong measures to attack this problem. In *United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1112 (D.Minn. 1982), this court stated, "Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created. To give effect to these congressional concerns, CERCLA should be given a broad and liberal construction." Nevertheless, the reach of CERCLA is not unlimited.

This case highlights the clash of two important policy concerns. On the one hand, CERCLA must be construed liberally in order to deal effectively with the problem of hazardous wastes. On the other hand, the life of a corporation may not be extended indefinitely. A corporation that follows the statutorily defined procedures for dissolution and termination should, in the absence of fraud, be able to rely on the promise of Minn.Stat. § 300.59 that the corporation will cease to exist for all purposes after three years.

In two cases the federal courts have addressed the conflict between CERCLA and state statutes regarding capacity to be sued, and the two courts involved have taken opposite positions. In *Levin Metals Corp. v. Parr–Richmond Terminal Co.*, 631 F.Supp. 303 (N.D.Cal.1986), *aff'd*, 817 F.2d 1448 (9th Cir.1987), the plaintiff brought a CERCLA action against a dissolved corporation. The district court dismissed the action on the grounds that California law did not authorize suits against dissolved corporations for causes of action arising subsequent to dissolution. 631 F.Supp. at 304. The Court of Appeals for the Ninth Circuit affirmed and held that the capacity of a dissolved corporation to be sued is governed by Rule 17(b). The court rejected the plaintiff's contention that CERCLA preempts state law on capacity to be sued. 817 F.2d at 1451.

The other case, *U.S. v. Sharon Steel Corp.*, 681 F.Supp. 1492 (D.Utah 1987), involved a CERCLA action brought against a corporation that had lost the capacity to be sued under Maine law four years earlier. The court disagreed with the Court of Appeals for the Ninth Circuit and ruled that "CERCLA overrides Rule 17(b) and the applicable state law, whatever that law might be." *Id.* at 1495.

The Court of Appeals for the Eighth Circuit has ruled on this issue only indirectly. In *United States v. Northeastern Pharmaceutical & Chemical Co.*, 579 F.Supp. 823 (W.D.Mo.1984), *aff'd in part*, 810 F.2d 726 (8th Cir.1986) *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987), the United States brought a CERCLA action against a corporate defendant which had forfeited its charter, but had not filed the certificate of voluntary dissolution required by Delaware law. The district court found that "a corporation with a forfeited charter is not completely dead for all purposes, but merely in 'a state of coma,' during which it is still subject to suit, even if the suit is brought more than three years after the charter forfeiture." 579 F.Supp. at 828 n. 1. As a result, the district court held the corporation liable. The court of appeals agreed, stating that "forfeiture of the corporate charter and voluntary disso-

lution of the corporation are not legally equivalent." 810 F.2d at 746. The court also affirmed the district court's conclusion that in a CERCLA action "[t]he capacity of a corporation to sue or be sued is determined by the law under which it is organized." *Id.* (citing Fed.R.Civ.P. 17(b)).

The case at hand is slightly different from *Northeastern* because following Rule 17(b) in this case would defeat liability for Industrial Steel. However, the Eighth Circuit placed no limitations on its conclusion that Rule 17(b) applies to CERCLA cases. Moreover, the holding of *Northeastern* that voluntary dissolution is qualitatively different from forfeiture of charter implies that dissolution, followed by the three-year survival period, terminates the corporation's comatose condition and renders the corporation legally dead. Not even the important policy goals underlying CERCLA can resurrect Industrial Steel. For the same reasons, Onan's argument with respect to MERLA must fail as well.

Onan argues in the alternative that Industrial Steel's dissolution was ineffective. Onan contends that Industrial Steel was aware of its potential liability for cleanup of the Andover site but failed to make provisions for the payment of this "debt." According to Onan, such action does not satisfy the statutory requirements for dissolution set forth in Minn.Stat. § 301.48, which was in force when Industrial Steel attempted to dissolve. Onan cites the dissent of Justice Yetka in *Mattson v. Underwriters at Lloyds of London*, 414 N.W.2d 717 (Minn.1987), for the proposition that a corporation may not undertake voluntary dissolution in order to avoid liability and that any such dissolution is ineffective.

The court notes that the majority in *Mattson* did not reach this issue. However, it is true that dissolution cannot serve as clandestine substitute for bankruptcy. Justice Yetka's dissent succinctly states the potential problem: "Plaintiffs' attorney maintains that Lloyds of London encouraged Car–Del to dissolve quietly and secretly so that, unknown to plaintiffs, the 3–year statute would bar plaintiffs from collecting the deficiency judgment against Car–Del and, therefore, bar Car–Del's claim against Lloyds of London." *Id.* at 722 (Justice Yetka dissenting). In contrast, Industrial Steel dissolved openly, disclosing its dissolution to both the EPA and the MPCA. The company had been out of business for a number of years and had no good reason not to dissolve. Onan's contention that Industrial Steel failed to provide for its debts is also without merit. The potential claims against Industrial Steel were not outstanding debts at the time of the company's dissolution. Moreover, Industrial Steel took steps to secure insurance coverage for claims relating to the Andover site by suing its insurers. If an action had been brought against Industrial Steel within the three-year period, the company could have met its obligations, at least in part. Having concluded that Industrial Steel followed the statutory requirements for dissolution, the court will not find the dissolution ineffective.

■ Onan's final argument is that even if Industrial Steel lacks the capacity to be sued, George Rutman may be held personally liable. Onan's claim against Rutman is based on two separate theories. First, Onan asserts that Rutman may be liable as trustee for any undistributed corporate assets. Second, Onan claims that Rutman may be liable as a shareholder who received corporate assets properly payable to Onan. Onan has not sued Rutman in his individual capacity.

Onan's action against Rutman as trustee must fail because Rutman no longer has the capacity to be sued. This conclusion is compelled by the Minnesota Supreme Court's decision in *Henderson v. Northwestern Heating Engineers, Inc.*, 274 Minn. 396, 144 N.W.2d 46 (1966). The court stated:

Since one of the duties of the trustee enumerated in § 301.52 is to defend the corporation against claims, it must follow that his capacity as trustee will continue so long as the corporation can be legally subjected to claims. Since under § 300.59 the corporation's existence continues for 3 years after the filing of the certificate for the purpose of defending

actions, it must of necessity follow that the trustee will remain a trustee for the 3–year period.

144 N.W.2d at 48. *See also Mattson,* 385 N.W.2d at 857 (quoting *Henderson* with approval). In this case Rutman's capacity to be sued as trustee terminated on October 28, 1986, at the same time Industrial Steel lost the capacity to be sued.

Finally, Onan's action against Rutman for shareholder liability is fatally flawed. Rutman asserts that he never owned shares of Industrial Steel and that another company owned all of the stock of Industrial Steel. In addition, Onan's claim is based on Minn.Stat. § 300.64, which holds a shareholder liable "[i]f the capital stock of a manufacturing corporation is withdrawn and refunded to the stockholders before the payment of corporate debts for which it would have been liable...." If the corporation is not liable for the alleged debt, then the shareholder is not liable either. Industrial Steel cannot be sued for any reason beyond the three-year period following dissolution, regardless of whether any distributed or undistributed assets exist. Onan cannot circumvent this rule and achieve the desired result indirectly by suing a shareholder.

Accordingly, IT IS ORDERED that:

1. Industrial Steel's motion to dismiss Onan's action in its entirety shall be, and hereby is, GRANTED.

2. George J. Rutman's motion to dismiss Onan's action in its entirety shall be, and hereby is, GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.