SOO LINE RAILROAD COMPANY, a Minnesota corporation, individually and on Behalf of the State of Minnesota, Plaintiff,

v.

B.J. CARNEY & COMPANY, a Nevada corporation; William Davenport, Luther Fendler, Jerome Nevin, Charlee O'Malley and Marvin Soehern, officers and directors of B.J. Carney & Company, as trustees of B.J. Carney & Company; B.J. Carney & Company Limited Partnership, a Washington limited partnership, as successor in interest to B.J. Carney & Company; U.S. Bank of Washington, as trustee of the Testamentary Trust of Milo P. Flannery fbo Jerome F. Nevin; U.S. Bank of Washington, as trustee of the Testamentary Trust of Milo P. Flannery fbo Charlee O'Malley; William Davenport, Luther Fendler and U.S. Bank of Washington, as trustees of the Living Family Trust of Maud O. Flannery fbo Jerome F. Nevin; William Davenport, Luther Fendler and U.S. Bank of Washington, as trustees for the Living Family Trust of Maud O. Flannery fbo Charlee O'Malley; U.S. Bank of Washington, as trustee of the Testamentary Trust of Aileen Flannery Nevin, Fund B fbo Jerome F. Nevin and Charlee O'Malley; U.S. Bank of Washington, as trustee of the Testamentary Trust of Aileen Flannery Nevin, Fund A fbo John C. Nevin together as general partners of B.J. Carney Limited Partnership; E.L. Rehn, William Davenport, Luther Fendler, as personal representatives of the Estate of John C. Nevin, Jerome Nevin,

Charlee O'Malley, Gonzaga University and Gonzaga Preparatory School, as limited partners of B.J. Carney & Company Limited Partnership; and Marion Wilson and E.L. Rehn, William Davenport and Luther Fendler, as personal representatives of the Estate of John C. Nevin, individually; Defendants.

Civ. 4–92–161.

United States District Court,
D. Minnesota.

June 23, 1992.

Wayne G. Popham, Thomas W. MacLeod, III, Bryan J. Leary, Popham, Haik, Schnobrich & Kaufman, Minneapolis, Minn., for plaintiff.

Delmar R. Ehrich, Douglas A. Holmberg, Faegre & Benson, Janet Pollish, Donohue & Rajkowski, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, Chief Judge.

This matter is before the Court on defendants' motion to dismiss for failure to state a claim upon which relief may be granted. The motion will be denied.

FACTS

This action arises out of the alleged contamination of the Humboldt Yard property (the site) in Minneapolis. Plaintiff Soo Line Railroad Company (Soo Line) owned a parcel of property that included the site. For about fifty years Soo Line leased the site to B.J. Carney & Company, a Nevada corporation (the corporation). Soo Line alleges that for the duration of the leasehold, which ended in 1973, the corporation caused the continual release of hazardous substances onto the site, which have migrated onto the adjacent property owned by Soo Line. Compl. ¶ 12–15.

In 1986, shareholders of the corporation contributed their shares of stock to a second entity, B.J. Carney & Company Limited Partnership (the limited partnership), in exchange for partnership interests. Compl. ¶ 31. After the limited partnership was formed, the corporation filed for dissolution on February 11, 1987. Compl. ¶ 4. Soo Line alleges that the corporation did not give it notice of the dissolution. Compl. ¶ 25. The limited partnership continued the business of the corporation until it too was dissolved on July 20, 1990, and all of its assets were distributed. Compl. ¶ 32, 33.

Meanwhile, in 1988, Soo Line entered into negotiations to sell the site to a third party. In connection with these negotiations, Soo Line conducted an environmental investigation of the site. Soo Line claims that it discovered that the site and its groundwater were severely contaminated with hazardous substances. The Minnesota Pollution Control Agency conducted an additional investigation, concluding that groundwater contamination could affect sixty municipal wells serving approximately 75,000 people, and that surface water contamination could affect over half a million people.

Shortly after discovering the contamination, Soo Line sent a letter dated October 19, 1988 to the corporation and demanded that the corporation clean up the site and pay for costs. Compl. ¶ 26–27. On November 2, 1988, the corporation responded that it would cooperate and would contact Soo Line once it had managed to collect various documents. Compl. ¶ 28. The corporation did not inform Soo Line of its dissolution until February 13, 1989, two days after the applicable corporate survival statute had run. Compl. ¶ 29.

Soo Line filed this action on February 18, 1992. Its ten-count complaint asserts various claims against numerous defendants, all of which are in some way related to the corporation. The first defendant is the corporation itself. The second group of defendants are the statutory trustees of the dissolved corporation (William Davenport, Luther Fendler, Jerome Nevin, Charlee O'Malley and Marvin Soehern). The third defendant, the limited partnership, consists of two subgroups of defendants: the general partners (the trustees of various living trusts and testamentary trusts) and the limited partners (the personal representatives of the estate of John Nevin, Jerome Nevin, Charlee O'Malley, Gonzaga University, and Gonzaga Prep School Inc.). The fourth group of defendants consists of a former president of the corporation and the personal representatives of the estate of a former president of the corporation (Marion Wilson and the personal representatives of the estate of John Nevin).

Counts I, II, and III of the complaint allege that all of the defendants are responsible for releasing hazardous substances on the site in violation of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) as amended, 42 U.S.C. §§ 9601 *et seq.*, the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. §§ 115B.01 *et seq.*, and the Minnesota Environmental Rights Act (MERA), Minn.Stat. §§ 116B.01 *et seq.*, respectively. Compl. ¶ 35–45 (Count I), 46–56 (Count II), 57–61 (Count III).

Count IV alleges that the corporation, the statutory trustees, the limited partnership, the general partners, and the limited partners breached the corporation's lease of the site by failing to surrender the site in the same condition as it was at the time the lease was made and by failing to maintain the site in a clean, safe, and sanitary condition. Compl. ¶ 62–69.

Count V alleges that the corporation, the statutory trustees, the limited partnership, the general partners, and the limited partners are strictly liable under the common law by conducting abnormally dangerous activities on the site that caused harm to the soil and the groundwater. Compl. ¶ 70–76.

Count VI alleges that the corporation, the statutory trustees, the limited partnership, the general partners, and the limited partners were negligent in that they breached a duty to Soo Line to conduct operations at the site with due care, causing the release of hazardous substances that have caused injury. Compl. ¶ 77–84.

Count VII alleges that the corporation, the statutory trustees, the limited partnership, the general partners, and the limited partners committed a trespass by causing hazardous substances to contaminate the site and to spread to surrounding property. Compl. ¶ 85–90.

Count VIII alleges that the corporation, the statutory trustees, the limited partnership, the general partners, and the limited partners have created a continuing nuisance by causing hazardous substances to contaminate the site and to spread to surrounding property, which as a result has interfered with Soo Line's free use and enjoyment of the property. Compl. ¶ 91–98.

Counts IX and X allege that the corporation, the statutory trustees, the limited partnership, the general partners, and the limited partners may be liable to Soo Line for either indemnity or contribution for the costs of cleaning up the site. Compl. ¶ 99–103 (Count IX), 104–110 (Count X).

DISCUSSION

This matter is before the Court on defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim the Court presumes all factual allegations to be true and all reasonable inferences from those allegations are construed in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Palmer v. Tracor, Inc.,* 856 F.2d 1131, 1132 (8th Cir.1988). The

appropriate inquiry is not whether plaintiff will ultimately prevail but whether he will be allowed to introduce evidence to support his claims. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. Because dismissal on the pleadings is an extreme remedy it is not favored by the courts and is employed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). *Robinson v. MFA Mutual Insurance Co.,* 629 F.2d 497, 500 (8th Cir.1980). *See also Palmer,* 856 F.2d at 1132.

I. *Whether Any of the Defendants May Be Held Liable for Any Wrongful Conduct*

A. Corporation

■ The defendants first argue that the corporation cannot be held liable under any theory of relief because it no longer exists. Rule 17(b) of the Federal Rules of Civil provides that a corporations' capacity to be sued depends upon the law of the state of incorporation. *See* Fed.R.Civ.P. 17(b). The corporation at issue in this case was organized under the laws of the state of Nevada. Compl. ¶ 4. Nevada law provides for a two-year winding-up period for corporations that have filed certificates of dissolution. *See* Nev.Rev.Stat. § 78.585. During this survival period, a corporation may still be sued. *Seavy v. I.X.L. Laundry Co.,* 60 Nev. 324, 108 P.2d 853, 855–56 (1941), *overruled on an unrelated point in Turpel v. Sayles,* 101 Nev. 35, 692 P.2d 1290 (1985). Soo Line alleges that the corporation's certificate of dissolution was filed on February 11, 1987, and that the statutory winding-up period ended on February 11, 1989. Compl. ¶ 4. The defendants claim that the corporation's existence thus ended in 1989. Because this action was filed on February 18, 1992, well after the two-year period had ended, defendants argue that this suit cannot be maintained against the corporation.

Soo Line presents three arguments in response. First, Soo Line contends that at

least as to Soo Line, the corporation did not validly dissolve. The Nevada dissolution statute requires corporations to adequately provide for their liabilities and obligations before making any distributions to shareholders. *See* Nev.Rev.Stat. §§ 78.590(1), (2). On October 19, 1988, during the two-year dissolution period, Soo Line formally notified the corporation of the contamination of the site and demanded compensation for all clean-up costs. Compl. ¶ 26. Soo Line claims that not only did the corporation fail to properly notify it of the corporation's dissolution, but that the corporation failed to comply with the statute by neglecting to provide for Soo Line's claims. Compl. ¶ 28–30. Because the corporation allegedly failed to comply with the statute, Soo Line argues that the corporate existence still continues at least as to Soo Line.

■ At issue then is whether the corporation validly dissolved as to Soo Line under Nevada law. Although the parties cite no Nevada cases on point, the general rule is that the failure to comply with all of the provisions of the relevant corporate dissolution statute voids the dissolution as to creditors whose rights have been prejudiced thereby. *E.g., Licht v. Association Serv., Inc.,* 236 Neb. 616, 463 N.W.2d 566, 569–70 (1990); *Alpine Property Owners Ass'n., Inc. v. Mountaintop Dev. Co.,* 179 W.Va. 12, 365 S.E.2d 57, 64 (1987); *see* 16A William M. Fletcher, *Cyclopedia of the Law of Private Corporations* § 8007.1, at 11 (Supp.1991). *Alpine Property,* a case cited by Soo Line, effectively illustrates this rule.

The plaintiff in *Alpine Property* was a non-profit corporation that was created to further the general purpose of promoting the welfare of property owners at a particular resort. The defendant corporation in that case developed and operated the resort. In the fall of 1980, the defendant transferred the operation to the plaintiff and took steps to dissolve, without notifying the plaintiff. More than two years after the certificate of dissolution was issued and recorded, the plaintiff brought an action against the defendant, claiming that the defendant had failed to complete the

development of the resort as promised. The defendant contested its capacity to be sued as a dissolved corporation.

The Supreme Court of Appeals of West Virginia held that the suit could be maintained against the corporation because the corporation had failed to comply with all the statutory requirements of dissolution. Under West Virginia law, one of the prerequisites to dissolution is that all debts, liabilities and obligations of the corporation must either be paid or be adequately provided for. *See id.* 365 S.E.2d at 63 n. 10. In addition, the dissolving corporation is required to give written notice of dissolution to each known creditor. *Id.* In that case, the court determined that the defendant had not met either of these two requirements. The court further found that the plaintiff had been prejudiced by the defendant's failure to strictly comply with the notice requirement, because it was unaware of the fact that the applicable two-year period within which suits may be brought against dissolved corporations had expired by the time it filed suit. The court therefore found that the corporation had not effectively dissolved as to the plaintiff, which obviated the need to determine whether the survival statute could be equitably tolled. *Id.* at 64 n. 13. The plaintiff was permitted to maintain its action.

■ The case at bar is analogous to *Alpine Property.* Nevada law requires the corporation through its trustees to either pay off or adequately provide for the corporation's debts. *See* Nev.Rev.Stat. §§ 78.-590(1), (2). Implicit in this mandate is that the corporation notify its creditors of its dissolution. Neither requirement was satisfied in this case. Further, as was the plaintiff in *Alpine Property,* Soo Line has clearly been prejudiced by the corporation's failure to comply with these requirements, because it learned of the corporation's dissolution only after the survival period had expired. The Court therefore finds that the corporation's dissolution is ineffective as to Soo Line, and is therefore not a bar to this action.

■ Soo Line's second argument is that the corporation is estopped from deny-

ing its existence. Corporation by estoppel is a doctrine designed to protect those who would suffer loss because of their good faith reliance upon a false representation regarding the legal nature of the business entity with which they were dealing.[1] *El Ranco, Inc. v. First Nat'l Bank of Nevada*, 406 F.2d 1205, 1210 (9th Cir.1968) (applying Nevada law), *cert. denied*, 396 U.S. 875, 90 S.Ct. 150, 154, 24 L.Ed.2d 133 (1969). There are generally two elements. First, the party sought to be estopped must have done something intended to induce another to believe that certain facts exist and to act on that belief. Second, the other party must change its position to its detriment in reliance upon those facts. *Zoning Comm'n v. Lescynski*, 188 Conn. 724, 453 A.2d 1144, 1148 (1982); *see Loewen–Am., Inc. v. Advance Distrib. Co.*, 705 F.2d 311, 313 (8th Cir.1983) (per curiam).

Soo Line claims that both of these elements have been met in this case. Soo Line alleges that it had done business with the corporation as a corporation for over fifty years. In October of 1989, Soo Line sent a letter to the corporation, notifying it of the contamination to the site and requesting contribution for clean-up costs. Compl. ¶ 27. Without disclosing that it had dissolved, the corporation acknowledged receiving Soo Line's demand letter and indicated that it was locating records. The corporation informed Soo Line that it would contact Soo Line when it had compiled the necessary documents. According to Soo Line, the corporation through this statement intentionally misled Soo Line as to its status as a dissolved corporation. Only after the two-year survival period had expired did the corporation finally notify Soo Line of its dissolution. As a result of its reliance upon the corporation's implicit affirmation of its continued existence, Soo Line's claims may be barred by the survival statute. Soo Line therefore argues that the corporation should be estopped from denying that it continues as an existing corporation.

In response, the defendants argue that equity simply cannot toll the expiration of corporate survival statutes. *Van Pelt v. Greathouse*, 219 Neb. 478, 364 N.W.2d 14 (Neb.1985); *Indiana Nat'l Bank v. Churchman*, 564 N.E.2d 340 (Ind.Ct.App. 1990). For example, in *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183 (7th Cir.), the plaintiff, an Illinois corporation, brought an antitrust action against a competitor on November 11, 1977. The plaintiff, however, filed its certificate of dissolution on November 28, 1972. Illinois has a two-year corporate survival statute. *See* Ill.Rev.Stat. ch. 32, § 157.94. The district court dismissed the action on the ground that the dissolved corporation lacked the capacity to be sued because the statutory survival period had expired.

■ On appeal, the United States Court of Appeals for the Seventh Circuit affirmed, holding that equity cannot toll the expiration of the corporate survival statute. The court first noted that corporations owe their existence purely to statute. At common law, once a corporation had dissolved, it could no longer be sued, regardless of whether this result precluded the filing of legitimate claims. Perceiving this result as unacceptably harsh, legislatures enacted survival statutes to permit corporations to wind up their affairs in an orderly manner and to prevent them from dissolving in order to escape creditors. *Id.* at 1189. Ignoring this second purpose, the Seventh Circuit concluded that the equitable tolling of the statute would defeat the statute's purpose of providing a specific duration for the winding-up period. *Id.* Therefore, the court determined that because the two-year statute had expired long before the corporation filed its complaint, the corporation lacked the capacity to be sued.

---

**1.** Although the parties call this doctrine "corporation by estoppel" this phrase is a misnomer. Corporation-by-estoppel cases generally involve protecting shareholders from liability where a creditor believed it was dealing with a de jure corporation, and it subsequently turns out that it was not. The parties in this case are really relying upon an application of traditional equitable estoppel.

Although as a general rule equity will not toll the expiration of a corporation's survival statute, Soo Line does not ask the Court to toll the application of Nev.Rev. Stat. § 78.585. Rather, it argues that the corporation's intentional misrepresentation as to its existence estops the corporation from now denying it. In dicta, the district court in *Canadian Ace* recognized that this theory might apply even if the statutory survival period had run. The court noted that a dissolved corporation might be equitably estopped from denying its existence where it has engaged in a series of intentional misrepresentations about its activities that leads an unwary creditor to believe that the corporation exists. *Canadian Ace Brewing Co. v. Anheuser–Busch, Inc.*, 448 F.Supp. 769, 773 (N.D.Ill.1978) (citing *Ruthfield v. Louisville Fuel Co.*, 312 Ill.App. 415, 38 N.E.2d 832, 838–39 (1942)). However, the district court found that in that particular case, there was no question of anyone being misled as to the corporation's existence. *Canadian Ace*, 448 F.Supp. at 773.

Further, Soo Line cites two tax cases that support its theory. First, in *Lucas v. Hunt*, 45 F.2d 781 (5th Cir.1930), the corporation at issue filed its tax return in 1919 and dissolved in 1921 under a statute that provided for a three-year survival period. Slightly more than three years later, the corporation's president executed a waiver purporting to extend the statute of limitations applicable to the government in tax cases to August 2, 1925. The government issued an assessment for the year 1919 in June of 1925. Although the Board of Tax Appeals held that the waiver of the statute of limitations was invalid because the corporation no longer existed, the court of appeals reversed. The court noted that the commissioner had relied on the waiver. In light of this reliance, the court held that by signing the waiver the president was estopped from challenging its validity on the ground that the corporation no longer existed. *Id.* at 782. In the circumstances of that case the court concluded that the commissioner was entitled to claim equitable estoppel.

The second case is *Benoit v. Commissioner*, 238 F.2d 485 (1st Cir.1956). The corporation at issue in that case had dissolved and the state three-year survival period had expired. After this time, the corporation's treasurer executed a waiver of the statute of limitations on behalf of the corporation. When the commissioner brought an action on tax assessments, the treasurer claimed that the waiver was invalid because the corporation had dissolved before the waiver was executed. The court of appeals rejected this argument, holding that the commissioner was entitled to rely on the validity of the waiver. The court therefore estopped the corporation from denying the waiver's validity.

While these two cases involved the possible liability of distributees of a dissolved corporation's assets for corporate taxes, and not suits against the corporation as an entity in its own right, they clearly support the proposition that an entity that holds itself out as a corporation cannot later deny that existence when to do so would prejudice those that relied upon those representations. This proposition governs the facts in the case at bar. Assuming the facts as alleged in the complaint to be true, the corporation knew of Soo Line's claims during the survival period. Had Soo Line known of the corporation's dissolution, it could have brought suit at that time. Yet while Soo Line expressly demanded that the corporation accept responsibility for the release of hazardous substances at the site, the corporation not only concealed the fact of its dissolution, but expressly informed Soo Line that the corporation would contact it once it had compiled its records. This communication could reasonably be interpreted as a representation that the corporation was in existence. Because Soo Line's claims were brought after the survival period had expired and could therefore not be brought against the corporation, Soo Line has clearly suffered prejudice. Each of the elements of estoppel have therefore been met in this case.

Furthermore, estopping the corporation in this case would further, not hin-

der, the purposes of the state dissolution statute. As noted above, one of the primary purposes for the survival period is to permit suits against corporations for a period of time so as to prevent them from dissolving in order to frustrate creditors' claims. In this case, Soo Line alleges that although the corporation was notified as to Soo Line's claims during the survival period, the corporation failed to notify Soo Line of its dissolution and failed to provide for Soo Line's claims in any way. Although the Nevada legislature in its wisdom found that two years was a sufficient period of time for creditors to bring claims against dissolving corporations, the fact, which is assumed to be true, that the corporation concealed its dissolution and failed to provide for Soo Line's claims could frustrate this second purpose of the survival statute. Therefore, even if the corporation had complied with the requirements of the dissolution statute, the Court would estop the corporation from denying its existence in this lawsuit.[2]

### B. Statutory Trustees

The defendants next argue that the statutory trustees cannot be sued for the same reason that the corporation cannot be: once the survival statute expires, no action may be maintained against either the corporation or its trustees. In support of this argument, the defendants rely upon *Onan Corp. v. Industrial Steel Corp.*, 770 F.Supp. 490 (D.Minn.1989), *aff'd without op.*, 909 F.2d 511 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). The plaintiffs in *Onan*, in addition to suing the defendant corporation, asserted claims against a former director as trustee for the dissolving corporation; the plaintiff did not sue the trustee in his individual capacity. The complaint set forth two separate theories: first, that the trustee could be liable for any undistributed corporate assets, and second, that he could be liable as a shareholder who received assets that were properly payable to the plaintiff. The district court dismissed these claims on the grounds that the trustee lacked the capacity to be sued. Citing *Henderson v. Northwestern Heating Engineers, Inc.*, 274 Minn. 396, 144 N.W.2d 46, 48 (1966), in which the court held that a corporation's trustee continued in this capacity until the expiration of the survival period, the *Onan* court found that no action may be maintained against a trustee in his representative capacity after the survival period had run. *Onan*, 770 F.Supp. at 495–96. In this case, the defendants contend that because the two-year Nevada survival period has run, no action can be maintained against the trustees.

 In response, Soo Line argues that it may maintain an action against the trustees for breach of fiduciary duty. As a general rule, trustees of a dissolved corporation owe fiduciary duties to creditors of the corporation, and may be held liable for damages resulting from breach of those duties. *E.g., Alpine Property*, 365 S.E.2d at 65. In this case, the trustees failed to notify Soo Line of the corporation's dissolution and to provide for Soo line's claims. Soo Line's action lies directly against the trustees. At this stage of the litigation, the Court finds it premature to dismiss Soo Line's claims against the trustees in light of the conclusion that the corporation and its trustees failed to comply with the Nevada dissolution statute.

### C. The Limited Partnership
#### 1. *Successor Liability*

 The defendants argue that the limited partnership, a Washington limited partnership, cannot be held liable under any theory for relief on the grounds that it is not the corporation's successor. The defendants characterize Soo Line's claims as seeking relief from the limited partnership

---

**2.** Although the Court need not reach the issue of whether CERCLA imposes liability upon dissolved corporations, the Court believes that CERCLA does impose such liability, preempting state capacity statutes to the contrary. *United States v. Sharon Steel Corp.*, 681 F.Supp. 1492, 1498 (D.Utah 1987); *contra Onan Corp. v. Industrial Steel Corp.*, 770 F.Supp. 490 (D.Minn.1989), *aff'd without op.*, 909 F.2d 511 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990).

under the doctrine of corporate successor liability. As a general rule, a business entity that purchases all the assets of another corporation does not succeed to its debts and obligations. *E.g., Wallace v. Dorsey Trailers Southeast, Inc.*, 849 F.2d 341, 342 (8th Cir.1988); *see* 15 Fletcher, *supra* § 7122, at 231. The doctrine of corporate successor liability is an exception to this general rule, and imposes liability upon a succeeding business entity in four general instances: [3]

> 1) where the purchaser expressly or impliedly agrees to assume such debts;
>
> 2) where the transaction amounts to a consolidation or merger of the corporation (de facto merger);
>
> 3) where the purchasing corporation is merely a continuation of the selling corporation (mere continuation); and
>
> 4) where the transaction is entered into fraudulently in order to escape liability.

*See Wallace*, 849 F.2d at 343; *United States v. Western Processing Co.*, 751 F.Supp. 902, 905 (W.D.Wash.1990). In this case, only the first three exceptions appear to be at issue. [4]

The first exception at issue involves where the purchasing entity expressly or impliedly assumes the obligations of the selling entity. *Louisiana–Pacific v. Asarco, Inc.*, 909 F.2d 1260, 1263 (9th Cir.1990). The defendants allege that the complaint contains no factual allegations that the partnership expressly or impliedly assumed the liabilities of the corporation; rather, the complaint, according to defendants, states only the "bare conclusion" that the corporation "succeeded to and assumed" the assets and liabilities of the corporation. Defs.' Mem. at 32. This allegation, defendants argue, does not constitute a short and plain statement of the claim entitling the plaintiff to relief sufficient to withstand a motion to dismiss.

Soo Line responds that it has adequately pleaded a claim of successor liability based upon an express or implied assumption theory. Soo Line accurately notes that this question is one of fact. *See Louisiana–Pacific Corp.*, 909 F.2d at 1264. In its complaint Soo Line alleges that the corporation assumed the liabilities of the corporation. Compl. ¶ 32. Accordingly, Soo Line claims that it is entitled to develop supporting facts through discovery.

Although it seems that the factual allegations in the complaint supporting this theory are sparse, the Court believes this claim should not be dismissed at this time.

---

**3.** The parties acknowledge that some courts have recognized an additional instance where liability upon successor corporations. This situation, called the product line exception, is not at issue in this case.

Defendants mention in a footnote that some courts have held that federal common law governs successor liability questions under CERCLA. Defs.' Mem. at 30 n. 16 (citing *Louisiana-Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260 (9th Cir.1990); *Sylvester Bros. Dev. Co. v. Burlington N. R.R.*, 772 F.Supp. 443, 447 n. 3 (D.Minn.1990) (Murphy, J.); *but see Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240 (6th Cir.1991) (holding that applicable state law determines corporate successor liability under CERCLA). This fact, however, makes little difference in this case because the parties only dispute three exceptions to the general rule, all three of which are generally recognized exceptions. *Compare Martin v. Abbott Labs.*, 102 Wash.2d 581, 689 P.2d 368, 384 (1984) *with Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989) *with Sylvester Bros.*, 772 F.Supp. at 447.

**4.** At the outset, the defendants contend that the limited partnership cannot be held liable under any theory of successor liability on the grounds that the doctrine applies only to corporations, and not partnerships in general or limited partnerships in particular. However, the case it cites for this proposition, *Tift v. Forage King Indus., Inc.*, 108 Wis.2d 72, 322 N.W.2d 14, 15 (1982), holds directly to the contrary. In *Tift*, the plaintiff was injured by a product manufactured by a sole proprietorship. Before the plaintiff brought his action, the sole proprietorship changed forms, first to a partnership, and then to a corporation. The trial court accepted the defendant's argument that the rule of successor liability could not apply to entities of differing forms. The appellate court reversed, specifically noting that the rule of successor liability does not turn on the form of the business entities at issue. *Id.* at 17; *accord Heather Hills v. Carolina Custom Dev. Co.*, 100 N.C.App. 263, 395 S.E.2d 154, 155, *cert. denied*, 327 N.C. 634, 399 S.E.2d 327 (1990); *Plaza Hotel Associates v. Wellington Assoc., Inc.*, 84 Misc.2d 777, 378 N.Y.S.2d 859, 863–64 (1975); *Pepper v. Dixie Splint Coal Co.*, 165 Va. 179, 181 S.E. 406, 410 (1935).

The defendants do not dispute that the limited partnership purchased all of the corporation's assets. Soo Line alleges that they assumed the corporation's liabilities as well. Compl. ¶ 32. While more facts would certainly be beneficial, including those demonstrating the circumstances under which such an assumption took place, the Court finds that this question is one of fact that will not be dismissed at this time.

■ The second exception at issue is the de facto merger theory. The parties agree that there are four elements: 1) continuity of management, personnel, assets and operations; 2) continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock; 3) that the seller ceases operations, liquidates, and dissolves as soon as legally and practically possible; and 4) that the purchasing entity assumes the obligations of the seller necessary for uninterrupted continuation of business operations. *See Keller v. Clark Equip. Co.*, 715 F.2d 1280, 1291 (8th Cir. 1983), *cert. denied*, 464 U.S. 1044, 104 S.Ct. 713, 79 L.Ed.2d 176 (1984); *Louisiana–Pacific*, 909 F.2d at 1264. The defendants argue that the complaint lacks sufficient allegations supporting the last three of these four elements. Furthermore, defendants contend that there can be no allegation of continuity of shareholders because stock is not issued by a partnership.

■ However, as Soo Line notes, the de facto merger theory can apply where a corporation is succeeded by a partnership. *See Tift*, 322 N.W.2d at 17. Contrary to defendants' position, Soo Line's complaint adequately sets forth a claim of successor liability under the de facto merger theory. First, the defendants do not contest that the first element has been satisfied; Soo Line alleges that the corporation's capital, which consisted entirely of stock, *see* Compl. ¶ 31, was exchanged for partnership interests in the limited partnership. All of the shareholders thus became partners in the new entity. Compl. ¶ 31. The corporation then dissolved less than two months after the partnership was formed; *see* Compl. ¶ 25, 31. The limited

partnership, it is alleged, carried on the corporation's business under almost identical management and ownership. Compl. ¶ 32. Finally, the complaint alleges that the limited partnership assumed the corporation's liabilities. *See* Compl. ¶ 32. These allegations are sufficient to state a claim. While the complaint does not expressly allege that the partnership assumed those liabilities that were necessary to continue the uninterrupted business of the corporation, the defendants do not claim that they cannot understand the thrust of plaintiffs' claim or that they are prejudiced in any other way because of the lack of particularity in language. Accordingly, the Court finds that Soo Line has adequately pleaded a claim against the limited partnership under the de facto merger theory.

■ The third exception at issue is the mere continuation theory. The parties agree that this exception applies when the purchasing entity is merely a continuation or reincarnation of the selling corporation; in other words, when the new entity is "simply a 'new hat' for the seller." *Kelley v. Thomas Solvent Co.*, 725 F.Supp. 1446, 1458 (W.D.Mich.1988) (quoting *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir.1985)). As the parties observe, various factors have been considered relevant in making this determination, including: common identity of officers, directors, and shareholders, *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 625–26 (8th Cir.1981); continuity of investors and control, *Tift*, 322 N.W.2d at 16–18; and adequacy of consideration in the transfer of assets, *George v. Parke–Davis*, 684 F.Supp. 249 (E.D.Wash.1988).

■ The defendants first argue that Soo Line fails to state a claim under this theory because it applies only between corporations, and not between a corporation and a business entity of a different form. However, as noted above, courts have applied this theory to hold a partnership liable for a corporation's obligations. *See, e.g., Heather Hills*, 395 S.E.2d at 155. The defendants also argue that none of the factors set forth above have been met, because the complaint lacks a specific alle-

gation that there were common officers, directors or shareholders. While this is clearly the case, it seems excusable, given that limited partnerships lack these characteristically corporate offices. The complaint does allege, however, that all of the corporation's shareholders became partners in the limited partnership and that the limited partnership had the same management as the corporation. Compl. ¶ 31, 32. Therefore, the Court finds that the plaintiff in this case has successfully pleaded a claim under the mere continuity theory.

### 2. *Shareholder Distributee*

■ Even if the Court concluded that Soo Line failed to properly plead a claim against the limited partnership under a theory of successor liability, Soo Line seeks to hold the limited partnership liable not only as the corporation's successor, but also as one of its shareholder distributees. The defendants do not address this argument. As Soo Line notes, courts have permitted creditors of dissolved corporations to bring actions after the expiration of the survival period against shareholder distributees to the extent of assets received in the distribution if the creditors were not properly notified of the corporation's dissolution. *See, e.g., South Carolina Dep't of Social Serv. v. Winyah Nursing Homes, Inc.*, 320 S.E.2d 464, 468 (S.C.Ct.App.1984). In this case, Soo Line did not receive notice of the corporation's dissolution, even though it notified the corporation of its claims before the expiration of the statutory survival period. The Court therefore finds that Soo Line may maintain an action against the limited partnership as a distributee of the corporation's assets.

### D. The Nevin Estate and the Testamentary Trusts

The defendants next argue that the estate of one of the corporation's deceased former presidents and the testamentary trusts, which are general partners of the limited partnership, cannot be held liable under any theory of relief. According to the defendants, property received by inheritance falls under CERCLA's innocent landowner defense. CERCLA generally imposes sweeping liability upon those responsible for releasing hazardous substances into the environment. However, under the innocent landowner defense, a person may avoid CERCLA liability by showing that the release of hazardous substances was caused solely by "an act or omission of a third party other than ... one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant...." 42 U.S.C. § 9607(b)(3). The phrase "contractual relationship" expressly excludes property received by inheritance or bequest. 42 U.S.C. § 9601(35)(A). Because the testamentary trusts and the representatives of the Nevin estate acquired title to property by way of inheritance, the defendants claim that they fall outside the scope of parties made liable by CERCLA. Accordingly, the defendants argue that the Nevin estate and the testamentary trusts cannot be held responsible for clean-up costs.

■ In support of their position, the defendants cite *Snediker v. Developers Ltd. Partnership v. Evans*, 773 F.Supp. 984, 990 (E.D.Mich.1991). However, as Soo Line accurately notes, the court in *Snediker* never addressed the issue of whether the innocent landowner defense applies. The court specifically held in that case that the people who had received property by inheritance were not responsible persons within the meaning of CERCLA; it did not need to go on to determine whether as responsible persons, they were freed from CERCLA liability under the innocent landowner defense. *Id.* at 989 n. 8. Under the express language of CERCLA, a responsible person who has acquired property by inheritance or bequest is liable under CERCLA unless he can show by a preponderance of the evidence that 1) the release of hazardous substances was caused solely by a third party; 2) he exercised due care with respect to the hazardous substance; and 3) he took precautions against foreseeable acts caused by the third party and the consequences that could result from those acts. 42 U.S.C. § 9607(b)(3). Contrary to defendants' position, property received by inheritance is not automatically excluded from CERCLA liability. *See Freudenberg–NOK General Partnership v. Thomopoulos*, No. 91–297, 1991 WL 325290

(D.N.H. Dec. 9, 1991); *Riehl v. Travelers Ins. Co.*, 772 F.2d 19 (3d Cir.1985). As a result, the Court finds that Soo Line has stated valid claims against the testamentary trusts and the Nevin Estate.

In addition, the defendants argue that claims against the estate of John Nevin are barred by Nevada probate law. Nev.Rev. Stat. § 147.040 provides that all persons having claims against a deceased must file their claims within 90 days after the mailing of notice of probate or the first publication of the notice. Nev.Rev.Stat. § 147.-040. If a claim is not filed within this period, the claim is forever barred. *Id.* Defendants suggest, and Soo Line apparently does not dispute, that Soo Line had notice of the probate action. Defendants further allege, again without apparent dispute, that Soo Line has failed to move the Nevada probate court to reopen the Nevin estate so that it can assert its claims. The defendants argue that because no claims were asserted against the probate estate in Nevada probate court, Soo Line's claims are barred.[5]

In response, Soo Line argues that to the extent to which CERCLA imposes liability upon responsible parties, state probate law is preempted. In support of this position, Soo Line cites *Freudenberg, supra.* In *Freudenberg*, the court recognized a conflict between a similar state probate statute and the limitations period set forth in CERCLA. Relying upon the *Reilly* court's articulation of the purposes behind CERC-LA, *see United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1112 (D.C.Minn.), the court concluded that Congress' intent to preempt conflicting state law supported the preemption of New Hampshire's probate statute. Because in this case Nevada probate law circumscribes the scope of CERCLA liability, Soo Line contends that Nevada's bar to filing claims against the Nevin estate is preempted.

The Court agrees with the principle enunciated in *Freudenberg*. State law cannot circumscribe the scope of federal law. To the extent that state law purports to release responsible parties from liability for releasing hazardous wastes into the environment, CERCLA preempts state law. Furthermore, the defendants did not cite authority supporting their position in the CERCLA context. In light of *Freudenberg*, the Court will permit Soo Line to maintain its action against the Nevin estate.

## II. *Whether the Complaint States a Claim for Relief under Various Legal Theories*

### A. Joint and Several Liability of General and Limited Partners

Assuming that the limited partnership may be held liable either as the corporation's successor or as the distributee of the corporation's assets, the defendants contend that neither the general nor the limited partners may be held jointly and severally liable for the partnership's obligations. According to the defendants, the liability of the general and limited partners is to be determined by Washington law. Under Washington law, general partners are jointly and severally liable only for obligations arising in the ordinary course of business; all other obligations are joint. Wash.Rev. Code § 25.04.150(2). Further, the general partners in this case are the trustees of various trusts. According to defendants, trustees that are general partners can only be held personally liable for their own torts. Wash.Rev.Code § 25.04.150(3). Because the complaint fails to allege that the general partners personally committed some form of wrongful activity, the defendants contend that they cannot be held liable for any of Soo Line's claims.

Similarly, defendants argue that the limited partners cannot be held jointly and severally liable in this case. As a general rule, limited partners are not personally liable, either jointly or jointly and severally,

---

5. The defendants also assert in a footnote that even if CERCLA preempts Nevada probate law, Soo Line's state law claims against the probate estate are barred by the Full Faith and Credit Clause. U.S. Const. art. IV, § 1. Soo Line does not respond to this argument, and none of the parties addressed this argument at oral argument. Because the defendants merely raise this question in a footnote without presenting either argument or authority in support of their position, the Court will not address it any further.

for the partnership's obligations unless they participate in some way in the control of the business. Wash.Rev.Code. § 25.10.-190(1). In this case, the defendants contend that the complaint lacks an allegation that the limited partners participated in the control of the limited partnership's business. In addition, defendants argue that Soo Line's claims for wrongful distribution to the limited partners must be dismissed, because under Washington law limited partners are not liable for distributed assets unless they knew that the partnership was insolvent at the time of distribution. *See* Wash.Rev.Code §§ 25.10.370(1) & (2). According to the defendants, the complaint lacks these allegations. As a result, the defendants argue that the general and limited partners cannot be held jointly and severally liable.

■ However, as Soo Line correctly notes, responsible parties may be held jointly and severally liable under CERCLA. Both individuals and partnerships are statutorily defined "persons." *See* 42 U.S.C. § 9601(21) & 9607(a). As a general rule, CERCLA imposes joint and several liability upon responsible persons except where they can show that the harm is divisible. *E.g., State of New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir.1985); *United States v. Chem–Dyne Corp.*, 572 F.Supp. 802, 805–10 (S.D.Ohio 1983). Accordingly, the Court will let stand the allegations of joint and several liability unless and until the defendants show that the harm is divisible.

### B. MERA

Defendants next argue that the complaint fails to state a claim for relief under the Minnesota Environmental Rights Act (MERA), Minn.Stat. §§ 116B.01 *et seq.*, because it lacks an allegation of actionable conduct. MERA claims may be brought by any person in order to protect the natural resources of the state from pollution, impairment, or destruction. Minn.Stat. § 116B.03. A showing of "pollution, impairment or destruction," generally may be made showing conduct that materially adversely affects or is likely to materially adversely affect the environment. *See* Minn.Stat. § 116B.02, subd. 5.

The defendants argue that the complaint fails to allege "conduct" actionable under MERA. MERA does not define the term "conduct"; however, according to defendants, the dictionary meaning of the word—"the act, manner, or process of carrying on"—is to govern. Defs.' Mem. at 55 (quoting *Webster's Ninth New Collegiate Dictionary* 274 (9th ed. 1991). The defendants argue that Soo Line does not seek to affect any "manner of carrying on" because none of the defendants are currently doing anything on the site. Instead, the defendants claim that Soo Line seeks relief for the present effects of the corporation's alleged past conduct.

This narrow construction of the statute is allegedly bolstered by the legislative history. According to the defendants, the legislature did not intend to create a remedy; rather, MERA was viewed as a tool to prevent further harm to the environment. Defs.' Mem. at 56 (citing Note, *The Minnesota Environmental Rights Act*, 56 Minn. L.Rev. 575, 617 & n. 169 (1972)). Moreover, defendants argue that the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. §§ 115B.01 *et seq.*, which was enacted after MERA, was intended to provide the remedy that MERA lacked. The Court, it is argued, should not construe MERA to create a remedy, because such a result would be inconsistent with the enactment of MERLA. Thus, because MERA allegedly regulates conduct, and not the effects of conduct, the defendants argue that Soo Line has failed to state a claim under the statute.

■ However, contrary to defendants' argument, the failure to remedy a toxic waste site is considered ongoing actionable conduct under MERA. In *Werlein v. United States*, 746 F.Supp. 887 (D.Minn.1990), the court was faced with the same argument offered here by the defendants. The court rejected the argument and concluded that MERA applies where past pollution causes ongoing environmental problems. *Id.* at 898. Although the court noted that MERA may not authorize an order compelling a defendant to clean up an entire site, it determined that MERA does permit a court to order defendants to abate any

continuing contamination of underground or surface waters. *Id.* Because the complaint alleges that the defendants' activities have caused hazardous substances to be released that will continue to contaminate the soil and groundwater at the site, *see* Compl. ¶ 58, the Court finds that Soo Line has properly pleaded a claim under MERA.

## C. Common Law Claims

### 1. *Whether They Are All Barred by the Statute of Limitations*

As noted above, Soo Line's complaint contains allegations supporting the following common law claims: strict liability, breach of contract, negligence, trespass, and nuisance. Defendants argue that these claims are barred by the statute of limitations. According to defendants, each of these claims is governed by a six-year limitations period. *See, e.g.,* Minn.Stat. § 541.05, subd. 1(1) (breach of contract); Minn.Stat. § 541.05, subd. 1(3) (trespass); *Johnson v. Steele–Waseca Coop. Elec.,* 469 N.W.2d 517, 520 (Minn.Ct.App.1991) (nuisance). The defendants contend that the limitations period began to run at the latest in 1973, when the corporation's leasehold expired. Because these common law claims were brought well after the six-year period had run, the defendants argue that these claims are barred by the respective statutes of limitations.

As Soo Line properly notes, however, federal law essentially preempts state statutes of limitations if those state law claims are based upon exposure to hazardous substances released into the environment and the applicable limitations period provides for an earlier commencement date than federal law. 42 U.S.C. § 9658 provides in part:

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1). The statute further provides that the term "federally required commencement date" refers to the date that the plaintiff knew or should have known that his damages were caused or contributed to by the hazardous substance or pollutant or contaminant concerned. *See* 42 U.S.C. § 9658(b)(4). Thus, the statute effectively creates a federally mandated discovery rule for the accrual of state law claims involving releases of hazardous substances that cause or contribute to personal injury or property damage. *Bolin v. Cessna Aircraft Co.,* 759 F.Supp. 692, 704 (D.Kan.1991). Because Soo Line alleges that it had no notice of its damages until October of 1988, well within the applicable limitations periods, the Court finds that Soo Line's state law claims are not barred by the statutes of limitations.

### 2. *Breach of Contract & Negligence*

The defendants argue that Soo Line fails to state a claim for relief under both negligence and breach-of-contract theories on the ground that the duty not to release hazardous substances into the environment did not exist at common law or under the lease agreement. Rather, the defendants maintain that this duty arises by virtue of statute; namely, CERCLA, MERA, and MERLA. The Court should not, it is argued, retroactively impose these obligations upon the defendants, because these statutes were enacted after the corporation abandoned the site.

Assuming that neither the lease nor the common law imposes on the defendants obligations not to dump, state statutory law may have imposed such a duty. MERA was enacted in 1971, before the corporation returned possession of the land to Soo Line. Regardless, the Court believes that Soo Line has properly pleaded claims under both theories. With respect to breach of contract, Soo Line alleges that the lease agreement expressly required the corporation to maintain the premises in a clean condition, without any nuisances on the property, and to return the premises in the same condition as it was when the lease

began. Compl. ¶ 63–64 (citing paragraphs 9 and 16 of the lease agreement). These contractual provisions at least arguably impose a duty upon the defendants not to dump and then leave hazardous wastes on the site.

 With respect to the negligence claim, Soo Line alleges that the corporation owed Soo Line the duty to conduct corporate operations on the property with due care. Compl. ¶ 78–79. At common law, the possessor of land generally owed a duty to exercise reasonable care and to maintain the premises so as to protect visitors from an unreasonable risk of harm. *Cf. Pietila v. Congdon*, 362 N.W.2d 328, 332–33 (Minn.1985) (noting common law duty in the context of criminal action). The discharge of hazardous wastes on the site could constitute a breach of this duty. Because Soo Line seems to have alleged obligations that arise through contract and tort, as opposed to the retroactive application of environmental statutes, the Court will let Soo Line's claims for breach of contract and negligence stand.

### 3. *Strict Liability, Trespass, & Nuisance*

The defendants argue that the complaint fails to set forth claims for strict liability, trespass, and nuisance. Although the parties raise other arguments, the only disputed issue seems to be whether the complaint alleges that property adjacent to the site was damaged. The defendants claim that Soo Line alleges only that the site was damaged, not that property adjacent to the site was damaged. According to the defendants, the common law does not permit successors to property to bring actions against the previous landholders under these theories. *E.g., Wiltse v. City of Red Wing*, 99 Minn. 255, 109 N.W. 114, 115 (1906); *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F.Supp. 93, 102 (D.Mass. 1990). However, assuming the defendants are correct, the complaint does allege damage to property adjacent to the site. *See* Compl. ¶ 72–73, 86, 93. The Court, therefore, will not dismiss these claims.

### 4. *Contribution or Indemnity*

Finally, defendants allege that the Court must dismiss Soo Line's claims for contribution and indemnity arising out of the costs of cleaning up the site. According to the defendants, claims for contribution or indemnity must be based upon common liability. *Green v. United States Dep't of Labor*, 775 F.2d 964 (8th Cir.1985). Where there can be no liability on the principal claims, a claim for contribution or indemnity cannot stand. However, this argument presumes that the Court dismisses all other claims in this action. Soo Line has properly pleaded several claims against each of the defendants; the Court, therefore, will not dismiss the claims for contribution or indemnity.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that defendants' motion to dismiss for failure to state a claim upon which relief may be granted is denied.